CLAUDE H. HOOVER v. STATE OF NEBRASKA.

FILED APRIL 21, 1896. No. 8285.

1. **Homicide:** REFUSAL TO POSTPONE TRIAL: REVIEW. There must, to show prejudicial error, be made to appear something more than that within three weeks after a homicide has been committed there was a conviction of the accused in respect to such homicide of the crime of murder.

2. ———: ———: ———. There is necessarily vested in the district court a considerable discretion as to overruling an application for a continuance in a criminal case, and, to justify a reversal of the ruling in denial of such an application, such application must contain something more than the affidavits of the prisoner and his counsel, in general terms, that there exists in the county wherein the trial must take place a great deal of excitement.

3. **Information:** INTERLINEATIONS: PLEA IN ABATEMENT. From the mere fact that the word "purposely" was interlined with a pen in a type-written information, upon which a preliminary examination was had, it is not a necessary inference that the interlineation was made after or during the preliminary examination, and a plea in abatement sustained only by such assumption was properly overruled in the district court.

4. **Insanity:** OPINION OF NON-EXPERT WITNESS. Non-expert witnesses can be permitted to express opinion as to the sanity or insanity of a person, only when they have shown other sufficient qualifications, and have stated the facts and circumstances upon which their opinion of such mental condition is based.

5. **Trial:** ORDER REQUIRING WITNESS TO GO AWAY FROM ACCUSED: REVIEW. There is no presumption that the district judge, without sufficient justification, required witnesses, though relations of the prisoner, to leave the immediate vicinity of the accused during the progress of the trial; neither does the mere fact that this was done in an unusual manner justify the assumption that thereby prejudice resulted.

6. **Misconduct of County Attorney: Argument: Review.** Where a prosecuting attorney referred to facts not in evidence, and upon objection that the statements were unwarranted by the evidence, the district court instructed the jury to disregard such statements, there was left no ground for complaint for the reason that the court, when appealed to, granted all the relief prayed for.

7. **Murder in the First Degree.** The verdict is sustained by ample evidence which was uncontradicted and the judgment of the district court thereon is affirmed.

Error to the district court for Douglas county. Tried below before Scott, J.

The facts are stated in the opinion.

*James A. Powers* and *M. C. Acheson*, for plaintiff in error:

The plea in abatement was based on the fact that in the original complaint, which was type-written and upon which Hoover was bound over to the district court, the word "purposely" was interlined in some person's handwriting. An evident alteration of an instrument is generally presumed to have been made after the execution thereof. (Parsons, Contracts [7th ed.], sec. 722.)

If the alteration is noted, or if it appears in the same handwriting and ink as the body of the instrument, it may suffice to relieve against suspicion. (2 Greenleaf, Evidence [14th ed.], 564; *Master v. Miller*, Smith's Leading Cases [Am. ed.], part 2, 1315; *Lewis v. State*, 15 Neb., 90.)

A magistrate has no right to alter an information without consent. The word "purposely" was not properly a part of the complaint. The complaint being the foundation of the information, the county attorney could not insert in the latter the word "purposely." Accused cannot be tried for a higher offense than that charged in the complaint, and on which he has had a preliminary hearing. (*Wright v. State*, 45 Neb., 45; *White v. State*, 28 Neb., 341; *Alderman v. State*, 24 Neb., 101.)

When the complaint differs from the information, a plea in abatement is proper instead of a motion to quash. (*Cowan v. State*, 22 Neb., 519; *Hill v. State*, 42 Neb., 511;

*Coffield v. State*, 44 Neb., 421; *Agnew v. Dubois*, 8 W. N. C.
[Pa.], 406; *Gesser v. Braunfeld*, 13 W. .N. C. [Pa.], 209;
*Commissioners v. Desmartean*, 16 Gray [Mass.], 16; *Common-
wealth v. Fagan*, 15 Gray [Mass.], 194; Wharton, Criminal
Pleading & Practice, 277.)

Upon the type-written complaint the accused could
only be held for manslaughter. (*Simmerman v. State*, 14
Neb., 568.)

An essential word to raise the grade to murder is inter-
lined, and the presumption is that the interlineation
was unauthorized. (Lawson, Presumptive Evidence [ed.
1886], 390.)

The motion for a continuance should have been
granted. It was based on affidavit that accused could
not have a fair and impartial trial, owing to the recent
date the crime was alleged to have been committed and
on account of the exaggerated and sensational articles
which appeared in the newspapers and inflamed the
prejudices against accused. (*Poole v. State*, 18 Ga., 567;
*Commonwealth v. Dunham*, Thach. Crim. Cas. [Mass.], 516;
*John v. State*, 1 Head [Tenn.], 49; *Bishop v. State*, 9 Ga.,
127; *Howell v. State*, 5 Ga., 53; *King v. Jolliffe*, 4 T. R.
[Eng.], 285; *Williams v. State*, 6 Neb., 338; *Gandy v. State*,
27 Neb., 719; *Johnson v. Dinsmore*, 11 Neb., 393.)

Non-expert witnesses may give opinions as to sanity or
insanity. (*Schlencker v. State*, 9 Neb., 251; *Clark v. State*,
12 O., 483; *Pflueger v. State*, 46 Neb., 493; *Polin v. State*,
14 Neb., 546; *Connecticut Mutual Ins. Co. v. Lathrop*, 111 U.
S., 620; *Burgo v. State*, 26 Neb., 643; *State v. Klinger*, 46
Mo., 224.)

The action of the trial court in requiring witnesses—
the sister and half-sister of the defendant—to remove
from accused's side, by saying in a loud voice, in the
presence of the jury, "Go right away from here. You
cannot sit there," was misconduct of the court, and preju-
dicial to the rights of the accused. (*Bowman v. State*, 19
Neb., 526; *Carr v. State*, 23 Neb., 764; *Wheeler v. Wallace*,
53 Mich., 357; *Cronkhite v. Dickerson*, 51 Mich., 177; *Skelly*

*v. Boland*, 78 Ill., 438; *Hair v. Little*, 28 Ala., 249; *McDuff v. Detroit Evening Journal*, 47 N. W. Rep. [Mich.], 671.)

It was error to permit argument to be made while the judge was absent from the court room. (*Gravely v. State*, 38 Neb., 871.)

The want of an exception does not necessarily deprive the prisoner of his right to a new trial for errors prejudicial to him. (*Thompson v. People*, 4 Neb., 524; *Schlencker v. State*, 9 Neb., 302.)

It was prejudicial error for the county attorney to go outside the record in his argument to the jury.

*A. S. Churchill*, Attorney General, and *George A. Day*, Deputy Attorney General, for the state:

The crime of murder in the first degree can be charged without using the statutory language in the information. An act is done purposely when it is the direct result of the action of the will. If one, therefore, is charged intentionally, designedly, or willfully with the commission of some act, he is charged the same as though the act had been purposely done. For definition of the word "purposely," see Standard Dictionary; Anderson's Law Dictionary; *Fahnestock v. State*, 23 Ind., 262; *Whitman v. State*, 17 Neb., 224; *Haunstine v. State*, 31 Neb., 112.

The information, as well as the complaint, charged the crime of murder in the first degree without the use of the word "purposely." Section 309 of the Code of Criminal Procedure authorizes the magistrate to bind a prisoner to the district court for a higher offense than that charged where it appears to the magistrate that a higher offense has been committed.

The motion for a continuance was addressed to the sound discretion of the trial court, and there is no showing that such discretion was abused. (*Smith v. State*, 4 Neb., 286; *Burrell v. State*, 25 Neb., 581; *Williams v. State*, 6 Neb., 335; *State v. Thatch*, 5 Neb., 94; *Stoppert v. Nierle*, 45 Neb., 106; *Clark v. Carey*, 41 Neb., 780; *Home Fire Ins. Co. v. Murray*, 40 Neb., 601; *Nebraska Loan & Trust Co. v.*

*Hamer*, 40 Neb., 282; *McDonald v. McAllister*, 32 Neb., 514; *Ingalls v. Nobles*, 14 Neb., 272; *Singer Mfg. Co. v. McAllister*, 22 Neb., 359; *Billings v. McCoy*, 5 Neb., 187.)

Public excitement is usually deemed an insufficient ground for continuance where the statute authorizes a preliminary examination of and challenge to the jury, or where a change of venue is allowed by statute. (4 Encyclopedia, Pleading & Practice, 832; *Ballard v. State*, 31 Fla., 267.)

All facts necessary to show a clear abuse of discretion of the court to the injury of the accused must be presented, and where the record is silent or uncertain the presumptions are in favor of the correctness of the ruling. (*Barber v. State*, 13 Fla., 675; *McNealy v. State*, 17 Fla., 198; *Newberry v. State*, 26 Fla., 334; *Garner v. State*, 28 Fla., 113; *Joyce v. Commonwealth*, 78 Va., 287; *Baw v. State*, 24 S. W. Rep. [Tex.], 293; *State v. Hawkins*, 18 Ore., 476; *Poole v. State*, 18 Ga., 567; *Thompson v. State*, 24 Ga., 303; *Johnson v. State*, 48 Ga., 118; *Stevens v. State*, 93 Ga., 307; *John v. State*, 1 Head [Tenn.], 49; *Porter v. State*, 3 Lee [Tenn.], 496; *King v. State*, 91 Tenn., 617.)

Before a non-expert witness is permitted to give an opinion upon the question of sanity or insanity, he must first state the facts upon which such opinion is founded; otherwise it would be a mere substitution of non-expert opinion for facts. (*State v. Stickley*, 41 Ia., 232; *Pelamourges v. Clark*, 9 Ia., 1; *State v. Pennyman*, 68 Ia., 216; *State v. Klinger*, 46 Mo., 224; *American Bible Society v. Price*, 115 Ill., 623; *Wood v. State*, 58 Miss., 741; *Clark v. State*, 12 O., 483; *Grant v. Thompson*, 4 Conn., 208; *Shaver v. McCarthy*, 110 Pa. St., 339; *Holcomb v. State*, 41 Tex., 125; *Clapp v. Fullerton*, 34 N. Y., 190; *Goodwin v. State*, 96 Ind., 550; *Grubb v. State*, 117 Ind., 277; *Schlencker v. State*, 9 Neb., 248; *Polin v. State*, 14 Neb., 540; *Walker v. State*, 102 Ind., 502; *State v. Hayden*, 51 Vt., 296; *Morse v. Crawford*, 17 Vt., 499; *State v. Erb*, 74 Mo., 199; *Choice v. State*, 31 Ga., 424; *State v. Newlin*, 69 Ind., 108; *People v. Wreden*, 59 Cal., 392; *Hardy v. Merrill*, 56 N. H., 227; *Powell v.*

State, 25 Ala., 21; Dove v. State, 3 Heisk. [Tenn.], 349; Woodcock v. Johnson, 36 Minn., 217; McRae v. Malloy, 93 N. Car., 154; Beller v. Jones, 22 Ark., 92; Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U. S., 612; Commonwealth v. Sturtivant, 117 Mass., 122.) Tested by this rule, the testimony offered was incompetent. We have gone into this subject at some length because this court has, as in the recent case of Pflueger v. State, 46 Neb., 493, cited with apparent approval the case of State v. Lewis, 22 Pac. Rep. [Nev.], 241, in which the doctrine is announced that "witnesses who are not experts may testify to their belief as to the sanity or insanity of the accused without giving the facts upon which their belief is based."

Where a question is propounded to a witness to which an objection is sustained, the party desiring the evidence must offer to prove the facts sought to be introduced and have it made a part of the record. (Mordhorst v. Nebraska Telephone Co., 28 Neb., 610; Mathews v. State, 19 Neb., 330; Fosbinder v. Svitak, 16 Neb., 499; Masters v. Marsh, 19 Neb., 458; Yates v. Kinney, 25 Neb., 120; Hamilton v. Ross, 23 Neb., 630; Sellars v. Foster, 27 Neb., 119; Burns v. City of Fairmont, 28 Neb., 866; German Ins. Co. v. Hyman, 34 Neb., 704; Roach v. Hawkinson, 34 Neb., 658; Berneker v. State, 40 Neb., 810; Omaha Fire Ins. Co. v. Berg, 44 Neb., 522; Alter v. Covey, 45 Neb., 508.)

There is a presumption that jurors are men of sufficient intelligence to understand that their verdict must be based on the evidence adduced on the trial and the law as given in the instructions of the court. (State v. Jackson, 17 S. E. Rep. [N. Car.], 149; State v. Dusenberry, 20 S. W. Rep. [Mo.], 461.)

The alleged irregularity relating to the removal of witnesses was one of the incidents of the trial in preserving proper order in court. (Debney v. State, 45 Neb., 856; McMahon v. State, 46 Neb., 166; Lindsay v. State, 46 Neb., 177.)

The contention based on the absence of the judge during a portion of the argument cannot be examined. As-

signments of error, to be considered by the supreme court, must have been presented to and overruled by the trial court. (*Tecumseh Town Site Case*, 3 Neb., 267; *Thurman v. State*, 32 Neb., 224; *Coombs v. McDonald*, 43 Neb., 632; *Woodward v. Baird*, 43 Neb., 310; *Ecklund v. Willis*, 42 Neb., 737.)

RYAN, C.

Plaintiff in error was convicted of murder in the first degree in the district court of Douglas county. The information was filed December 24, 1895, and charged in appropriate language that the plaintiff in error, on December 13, 1895, had murdered Samuel Du Bois in said county. A plea in abatement was overruled December 26, 1895, and on the same day there was an arraignment and a plea of not guilty. On the day following the trial began, was continued on the 28th, and on the 29th there was a verdict as above indicated. A motion for a new trial was overruled on December 30, and on January 3, 1896, sentence was pronounced that Claude H. Hoover, on April 17, 1896, suffer death by hanging. Just before his death the business of Samuel Du Bois was repairing elevators. In his employ were Kate Brophy and Claude H. Hoover. In her testimony Miss Brophy described herself as a half-sister of Hoover and a half-sister of the widow of Samuel Du Bois. In the record the relationship of the parties is not stated with more fullness, and, indeed, no more definite information is necessary, for this enables us to understand why Hoover should feel authorized to talk as he did to Miss Brophy. Between the hours of 1 and 2 o'clock on the afternoon of December 13, 1895, Miss Brophy was in the office of Mr. Du Bois. Plaintiff in error came in and said to Miss Brophy, "I don't want you to go with that girl any more, because she ain't the kind of girl you ought to go with." In the discussion of this suggestion there seems to have arisen considerable feeling,—so much so that when, very soon afterward, Mr. Du Bois came into the office, he observed there was some-

thing wrong. When the nature of the trouble had been explained to him, Mr. Du Bois said he knew Miss Brophy would not go with any one who wasn't right, for she had always done right. To Mr. Hoover, Mr. Du Bois said that he should go out of the office, and at the same time he seems to have taken hold of Hoover and led him toward the door. While this was being done Hoover suggested that he would go out if Du Bois would pay him the wages due him. This was agreed to and very soon done, and Mr. Hoover, upon receiving his pay, said to Mr. Du Bois that he was obliged to him, and was told by Mr. Du Bois that he was welcome. The deceased and the accused seem not to have met again until just before the commission of the homicide hereinafter described. About fifteen minutes before 2 o'clock, Hoover, by telephone, arranged with Miss Brophy to meet him, and soon afterward, from across the street, beckoned her to come to him. Upon compliance he asked her the address of Mr. Colby at Kansas City, saying that he was that night going to that city. In this interview he spoke of Du Bois and said that Du Bois had no business striking him, and that if he, Hoover, would do right he would shoot Du Bois. He was probably considerably intoxicated at this time, shed tears, and sent his farewells to other members of the family. It is not clear from the evidence whether this interview was before or after the purchase of the pistol with which he afterwards killed Du Bois. It was, at any rate, about the same time in the afternoon, that is to say, about 2 or 3 o'clock. About half past five o'clock Mr. Hoover went to the shop of Mr. Saalfield, a shoemaker. There were then in the shop some other persons, and Mr. Hoover sat down and talked with them, and among other things he remarked that he would give a quarter if Sam Du Bois would show up. His companions did not notice that he was much intoxicated, if indeed he was at all, at this time. Within fifteen minutes after Hoover had become an inmate of the shop, Samuel Du Bois entered, saying,

"Good evening, gentlemen," and was instantly confronted by Hoover, who said, "I've got you where I want you. You son-of-a-bitch." The persons in the shop at the time were able to state in their testimony nothing that immediately followed this remark, except that they saw two flashes of a pistol in Hoover's hand and heard Du Bois say, "I'm shot!" It seems, however, that Du Bois must instantly have closed with his assailant, for the earliest resumption of the narrative of any eye-witness begins with the description of the manner in which Du Bois was holding Hoover powerless to do him further harm. Finally Du Bois, unassisted, wrenched the pistol from Hoover's grasp, and having turned from Hoover, said: "Somebody take this gun. He shot me, but I don't want to shoot him." Mr. Fenton took the pistol from Mr. Du Bois, who immediately took off his coat, and as soon as some garments could be spread upon the floor, lay down. Before Du Bois had lain down, Hoover said to him, "I always told you I would shoot you." Afterward, however, he seemed sorry for what he had done. Du Bois within fifteen hours died of the wounds inflicted by Hoover. We are able thus confidently to state the above facts, for there was, in respect to them, no conflict in the evidence. The matters upon which the plaintiff in error relies for a reversal of the judgment of the district court will now be considered in their order of presentation in the brief of his counsel.

It is first urged that the application for a continuance should have been sustained, in view of the showing thereby of the excited condition of the people of Douglas county, and that there was prejudicial error in hastening the trial as was done in this case. A considerable discretion is necessarily lodged with the district courts with reference to applications for continuance in criminal cases. If the rule was otherwise it would be almost impossible to bring to trial persons accused of grave crimes. The court in this case was certainly very expeditious, having performed the last of its duties January 3, 1896,—just

ten days after the filing of the information, and three weeks after the commission of the homicide. There is no showing that there was sacrificed any right of the accused; neither does it appear that if more time had been given him to prepare for trial, he would have been able to procure evidence of any kind to his advantage; and, so far as the existence of excitement was concerned, it was only shown by affidavits of the accused and his counsel couched in very general terms. While haste, if it was shown to have attended the various proceedings, might predispose a reviewing court to a favorable consideration of the proofs indicating that thereby the accused had actually suffered prejudice, this predisposition should not entirely excuse the absence of such proof. By the information upon preliminary examination it was charged that Claude H. Hoover "did, unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, kill and murder," etc. This information was type-written, except that the word "purposely" was interlined with a pen. In the district court the information upon which the trial was had contained the word "purposely." It is not shown that the word "purposely" was not in the information before the preliminary examination was had, except by an affidavit submitted in this court to procure an order requiring that such original information should be certified to this court for inspection. Upon this unsatisfactory showing, in this court made for the first time, we would not be justified in assuming that at an improper time an amendment of the information before the examining magistrate had been made, and this was the sole question presented by the plea in abatement. Whether or not this information would have been sufficient without the word "purposely" we do not consider, much less decide.

The next criticism of the action of the court is because there was excluded evidence which, it is claimed, would have shown that the accused was insane when he killed Du Bois. Miss Brophy testified that Hoover had been

drinking, but was not drunk while he was in the office; that at the interview across the street from the office he was drunk, she thought. "At times," she said, "he didn't talk right," "he talked strange," she always thought. In her cross-examination, Miss Brophy said she was seventeen years old and had lived in the family with the accused for two years and had seen him every day during this time, and that on the 13th of December, 1895, he was acting very strangely. The following proceedings during the cross-examination of Miss Brophy are shown, by the bill of exceptions, to have taken place:

Q. You had seen him act queer on other occasions?

A. Yes, sir.

Motion by the state to strike the answer as incompetent, irrelevant, immaterial, and not proper cross-examination. Sustained. Defendant excepts.

Q. From all that you saw of Claude this day, and all that you know of him, and the manner in which he acted on that day,—what was said and done,—did you consider him at the time sane or insane?

Objection by the state as incompetent, immaterial, irrelevant, and not proper cross-examination. Sustained. Defendant excepts.

It must be conceded that the objection that this was not proper cross-examination was well taken, and yet aside from this there is left undetermined the competency, materiality, and relevancy of the evidence excluded and of that offered on this branch of the case. The interrogative sentence, "You have seen him act queer on other occasions?" called simply for a conclusion of the witness. The inquiry should have been with reference to the facts and circumstances themselves, and not merely, in effect, whether the witness regarded the conduct of the accused on other occasions as queer. There was, therefore, no error in excluding this evidence. The next question, as to whether the witness, from what she saw of the accused on the day of the homicide, and from what she knew of him, regarded

him as sane or insane, was premature.    The rule is that before a non-expert can give his opinion as to the sanity or insanity of a person, he must state the facts and circumstances upon which he bases his conclusion.    In *Schlencker v. State*, 9 Neb., 241, it was held that the opinion of a witness not an expert is competent evidence upon the question of the prisoner's sanity where such opinion is formed upon facts within the personal knowledge of the witness and sworn to by him before the jury.    In the later cases in this court there has been no direct statement of the requirement that a non-expert witness, before giving his opinion as to the mental condition of a person at a certain time, must state the facts and circumstances upon which that opinion rests, yet the case above cited has been repeatedly approved in a general way.    (*Polin v. State*, 14 Neb., 540; *Shults v. State*, 37 Neb., 481.)    We are indebted to the brief of the attorney general for citations of the holdings of twenty-one different states in support of this rule, and the cases cited in behalf of the plaintiff in error are not in conflict with it.    Since the argument in this case the principle has been enforced in *Hay v. Miller*, 48 Neb., 156.    We cannot examine the errors alleged with reference to the exclusion of the evidence of Mrs. Du Bois as to the sanity of Hoover for a reason additional to that given above, which is that there was no statement as to what the proffered testimony would disclose, if admitted.

By affidavit it was shown, without contradiction, that while one of the attorneys for the prisoner was addressing the jury there were seated near the accused, Mrs. Du Bois and Miss Brophy; that the presiding judge, Hon. Cunningham R. Scott, came directly from his private room to them and, in the presence and the hearing of the jury, said: "Go right away from here.    You cannot sit there."  Counsel for the prisoner then said: "Your Honor: These are our witnesses;" to which the reply was simply, "Yes, sir."  It is insisted that this was prejudicial to the rights of the accused and must have had an influence upon the jury.    It is possible that too much display was

made in obtaining the removal of these ladies, and probably it would have been much better if the presiding judge had conveyed his wish to them through the medium of a bailiff, or some other person. It was a strange situation, however, and there may have been such misconduct that the presiding judge was justifiable in putting a stop to it in a very summary manner. The fact that the ladies were witnesses on behalf of the accused conferred upon them no right in a special manner to manifest to the jury their wish for his acquittal, and if anything of this kind was transpiring it was certainly the duty of the court to see that it ceased. It is true there is no evidence in the record of any misconduct, and yet this conduct of the judge, while not altogether dignified, cannot be assumed to have been without justification.

The fifth and last point urged in the brief is that there was misconduct on the part of the county attorney in making use of the following language in his argument to the jury, to-wit: "Samuel Du Bois was a man who rose by his own merit from humble walks of life, and was a man of large, generous heart. He was called upon to make the laws of this city, and these facts, with other circumstances, make this one of the most heinous crimes ever committed in this community." In the affidavit by which was shown the use of the above language it was disclosed that the county attorney further said to the jury: "For fourteen hours he suffered all the tortures of the damned." Following this quotation the affidavit contained these words: "That said Powers [an attorney for the prisoner] called the attention of the court to this language and insisted that it was unwarranted by the evidence, and thereupon the court instructed the jury not to consider it in arriving at their verdict, and further affiant saith not." It appears clearly from these quotations that the sole objection made to the language of the county attorney was that it was unwarranted by the evidence, and that, thereupon, the court by an instruction directed the jury not to consider it. This was all that counsel by his

objection seems to have required.   Prosecuting attorneys
cannot be too careful to confine themselves strictly
within the evidence.   It is not required of them that in
asserting the majesty of the law they shall resort to ques-
tionable means.   They are the representatives of the
state and should never forget to maintain its authority
by fair, open methods.   In this case, whatever lapse oc-
curred was instantly counteracted by the court as far as
required by counsel for the prisoner, and, therefore, he
has no ground for complaint.   This record has been very
carefully examined with a view to ascertaining whether
or not any prejudicial error was committed, and we can
find none.   The statement of the facts, established by un-
contradicted evidence which has hereinbefore been given,
leaves no room for doubt that the defendant was properly
convicted of the crime with which he was charged.   The
judgment of the district court is

AFFIRMED.

Sentence to be executed August 7, 1896.

IRVINE, C., dissenting.

I think this judgment should be reversed for the sole
reason that the accused was put on trial over his objec-
tions within so brief a period after the offense with which
he was charged was committed that he had no reasonable
time to prepare his defense, and was not permitted the
assistance of counsel within the proper meaning of the
term.   The offense was charged to have been committed
December 13.   The defendant was held to answer De-
cember 18.   The information was filed December 24.   He
was arraigned December 26.   He was put on trial De-
cember 27, less than two weeks after the offense was
committed.   It is true that there was no showing by evi-
dence preserved in the record of public excitement or
prejudice preventing a fair trial.   It is also true that a
motion for a continuance for the purpose of properly pre-
paring for trial must be supported by proof of the occa-

sion therefor. But there is a difference between the continuance of a cause and its mere postponement to a future day. The same strictness is not required in order to procure a temporary postponement that is required for a continuance over the term; and especially in a criminal case, although the application be for a continuance, if the proof be insufficient, the court should postpone the trial if it would be unjust for any reason to proceed at once. This was a capital case. The life of the accused was at stake. We cannot shut our eyes to well-known truths. Counsel, no matter how learned, no matter how experienced, require in all cases some time for preparation. Where his client's life is at stake, any lawyer, with a proper sense of the responsibility resting upon him, requires a considerable time for the examination of the case, for reflection, and for preparation for trial. His client is in such a case usually much less able to assist him than in civil cases, or than in criminal cases of minor import. It is not always possible for counsel to even sufficiently inform himself of the facts of the case, and of available evidence, to at once present the formal proof requisite to procure a continuance; and when a man is charged with murder, especially where, as it in this case turned out, insanity is a feature of the defense, a reasonable opportunity should be given counsel, not only to procure the attendance of witnesses, but to examine into the facts of the case and deliberate upon his course of conduct. As said by the supreme court of Louisiana in *State v. Ferris*, 16 La. Ann., 425: "The law, in securing to them [persons accused of crime] the assistance of counsel, did not intend to extend a barren right; for of what avail would be the privilege of counsel * * * if, on the spur of the moment, without an opportunity of studying the case, the former should be compelled to enter into an investigation of the cause?" I am aware that convictions have been sustained where less time intervened between the commission of the offense and the commencement of the trial than in the case at bar; but, so far as I know,

there has not been any recent instance of a sentence of death sustained under such circumstances of expedition against the protest of the accused.   But the case, to my mind, should not be controlled by precedent.  A reasonably speedy enforcement of the criminal laws is necessary; but the court should not permit the clamor of newspapers, or of the public, to so far hasten prosecutions as to substantially deprive the accused of their constitutional privilege of a fair and impartial, as well as a speedy, trial, and to the real assistance of counsel,—that is, the assistance of counsel who have had a reasonable opportunity to investigate the case and prepare a defense. I think in this case there was an abuse of discretion in not granting the accused a postponement of the trial, and that the judgment should be for that reason reversed.

RAGAN, C., concurs in the foregoing dissenting opinion.