WALTER DEAN v. STATE OF NEBRASKA.

FILED MARCH 1, 1935. No. 29398.

*J. A. Hayward,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Paul P. Chaney, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

CARTER, J.

The plaintiff in error, who will be referred to herein as the defendant, was convicted in the district court for Lancaster county of first degree murder and sentenced to life imprisonment in the penitentiary. From the overruling of a motion for a new trial, the defendant prosecutes error and presents to this court a record of his conviction for review.

The evidence shows that on April 20, 1934, at about 12 o'clock, noon, the defendant Walter Dean, Sam Rivette and Aubrey Wray were traveling east on O street in Lincoln in a Studebaker automobile bearing a Texas license plate. At a point between Seventeenth and Eighteenth streets on O street, officers Volcott Condit and Frank Robbins of the Lincoln police force overtook

them and signalled them to pull over to the curb and stop. As the police car came alongside of the Texas car, officer Robbins stepped out to make an investigation, when a shot was fired from the Texas car at the police car, the bullet going through the glass in the right front door. The Texas car immediately dashed away with the police car in pursuit. The chase continued down O street with the defendant and his companions, or some of them, firing at the police car and the officers returning their fire. At Prairie Home, about 12 miles northeast of Lincoln, the Texas car went into the ditch and was disabled. In the fight that followed, Wray was killed and the defendant Dean and his companion Rivette were captured by the police.

At the time of the running fight down O street, Luceen Marshall, a 13-year-old boy, with his sister Lois and others, were standing near the corner of Twenty-fourth and O streets. They watched the two cars go by, having been attracted by the sound of the police siren and the shooting. Luceen Marshall suddenly dropped to the ground complaining that his leg was hurt. Bystanders discovered that he had been shot in the abdomen and rushed him to a hospital, where he died on April 23. The defendant and his companion, Rivette, were then charged with the murder of Luceen Marshall.

The defendant contends that the court erred in failing to instruct the jury that they could, if the evidence warranted, return a verdict finding the defendant guilty of manslaughter. The record discloses that the defendant and his associates were fleeing from the police officers and firing at them from their car. If the defendant, or either of his companions, while engaged in the commission of some unlawful act, pointed his gun at the deceased or at some other person and killed the deceased, and purposely fired the gun, then the intent to kill was present and the elements of the crime of manslaughter are wholly lacking. Manslaughter occurs when death follows without the slayer forming the specific

intent or purpose to kill. If the intent or purpose to kill is present, the crime is murder and not manslaughter. *Fields v. State,* 125 Neb. 290. There can be no question that the defendant and his companions were engaged in an unlawful purpose when they fired on the police, dashed away in their car, and engaged in a pitched battle in an attempt to avoid arrest. The record discloses no evidence of any sudden quarrel arising among the participants. For a jury to find, under the evidence in this case, that the shot that killed the deceased was accidentally or unintentionally fired would be contrary to reason and logic. The trial court was right in holding that reasonable minds could not differ on this point. The elements constituting the crime of manslaughter are not present and the charge of manslaughter was rightfully withdrawn from the jury.

The defendant complains of the exclusion by the trial court of certain evidence purporting to be the dying declarations of the deceased, Luceen Marshall. We are unable to determine from the record whether or not the dying declarations would have been admissible or whether their exclusion constituted prejudicial error for the reason that an offer of proof of the facts sought to be put in evidence was not made. This court has held: "The rule is, and it is applicable alike to criminal and civil trials, that when to a question in direct examination objection is interposed by the adverse party and sustained, in order to present the ruling to this court for review, there must be an offer of proof of the facts sought to be put in evidence by the question to which the answer was excluded." *Savary v. State,* 62 Neb. 166. The above rule is applicable to the case at bar and we cannot say that there was prejudicial error in the ruling of which the defendant complains.

The defendant complains of the refusal of the trial court to permit certain tests to be made in the presence of the jury by A. R. Mort, a witness called by the defense as an expert on ballistics. The defendant sought to have

the witness fire some bullets taken from the car in which defendant and his companions were riding into a piece of beef for the purpose of then comparing them with the bullet taken from the body of Luceen Marshall. We are of the opinion that no error was made by the trial court in refusing the request. The rule is that it is within the sound discretion of the trial court to grant or to refuse permission, pending trial, to either party to make an experiment in the presence of the jury either in or out of court with the purpose of using the result in evidence. 16 C. J. 810. The reasons for this rule are many. Oftentimes, as in the instant case, exhibits already. in evidence are to be used in the test, one of the results of which would be a change in their condition. The trial court may have thought it important that they go to the jury as they were. Experiments before the jury should be allowed only where it is apparent that the jury would be enlightened thereby and, on the other hand, experiments and tests that would have a tendency to inflame the minds of the jury against either the state or the defendant should not be permitted. The same rule applies to an expert witness as to any other. The trial court must use his sound discretion in deciding whether or not the test or experiment should be permitted and, in the absence of an abuse of such discretion, error cannot be predicated from his ruling thereon. The trial court did not abuse his discretion in refusing to permit the experiment or test being made in the instant case and his ruling cannot be made the subject of error.

Defendant complains of the giving of certain of the instructions to the jury, the first of which, No. 12, is as follows: "It is immaterial whether the police officers of the city of Lincoln had a right to stop the car in which the defendant and two companions were riding and it is further immaterial whether the defendant Walter Dean and two others had a right to ignore the request of said officers to stop, provided you find from the evidence beyond a reasonable doubt that they did ignore such a

request. However, if said Dean or his companions or any of them, in their effort to escape from said officers, commenced shooting first, at said officers, then such shooting was an act of committing a felony and it then became the right and the duty of the police officers to pursue and arrest the occupants of the car in which the defendant was riding." Defendant contends this instruction to be erroneous in that it instructs the jury that whether or not the police had a right to stop the car and compel its occupants to submit to an investigation is immaterial. Defendant's counsel bases his argument on the assumption that an illegal arrest was being attempted. The evidence does not sustain this contention. The officers were not attempting to arrest the defendant and his companions, but were attempting to investigate the car, its occupants and contents. Whether their action was right or wrong was not material. Assuming that the officers were in the wrong, the defendant and his companions were not warranted in taking the law into their own hands and commencing to shoot without any provocation. They clearly committed a felony in so doing and it became the duty of the officers to immediately pursue and arrest them. Under the evidence produced in this case, the instruction complained of is not prejudicial to the defendant.

Defendant next complains of instruction No. 13, which is as follows:

"If you find from the evidence in the case beyond a reasonable doubt, that the defendant and two companions, Rivette and Wray, were traveling together in an automobile, with a common criminal purpose and design in mind; that they had deliberately armed themselves with deadly weapons; refused to be questioned by police officers to the extent of fleeing from them in their automobile, and while fleeing from the police officers they first shot at the police officers and one of their bullets killed the deceased, a bystander, all are equally guilty of the homicide.

"And if you find from the evidence beyond a reasonable doubt, that it was the intent of the defendant and his two companions to resist the officers to the extent of purposely killing and the death of the deceased was the result; and if you further find the deceased was killed of deliberate and premeditated malice by one of the three, all are equally guilty of the homicide."

Counsel for the defendant contends that this instruction assumes a state of facts not reflected by the evidence, namely, that the defendant and his companions had deliberately armed themselves and were traveling with some common criminal purpose or design in mind. To this we cannot agree. We must not lose sight of the fact that the intent, purpose or design by which a person acts is seldom capable of proof by direct and positive evidence and must be inferred by the jury from his acts and the circumstances surrounding the place of the alleged crime. The trial court properly permitted the state to show that the defendant and his companions had in their possession a .44 Winchester rifle, a .38 Smith and Weston revolver, a .32 Colt automatic pistol, loaded shells for all of said guns, $903.14, of which the defendant had $221.02, Wray the sum of $230.27, and Rivette $227.05. The balance of the amount was found along the highway and in the car. The evidence further shows that the $903.14 was made up of 20 five-dollar bills, 26 ten-dollar bills, 12 twenty-dollar bills, 53 one-dollar bills, 805 nickels, 470 dimes, 341 quarters, 160 half dollars and 280 pennies. This evidence, coupled with the fact that defendant and his companions did use their guns at the first sign of interference by law enforcement officers, is sufficient to sustain a finding by a jury that they were traveling with a common criminal purpose and design in mind, that they had deliberately armed themselves with deadly weapons, and that it was their intention, to the extent of killing, to resist any officer who might interfere with them in any way. The instruction does not assume a state of facts, but instructs the jury that, if they find the facts

set out to be true, defendant would be guilty of the homicide. That this is a proper way of instructing a jury there can be no doubt. The court properly gave this instruction in view of the evidence produced in this case.

Defendant also contends that instruction No. 14 is erroneous. It is as follows: "The court further instructs the jury that where three persons determined to resist arrest in case an attempt to arrest them is made, and said persons deliberately supplied themselves with arms and weapons for the purpose of killing any one who might be attempting to arrest, and in an encounter which followed an attempt to arrest the persons a third person was killed by one of them all three of said persons are guilty of murder in the first degree, providing that you find beyond a reasonable doubt that said killing was done purposely, deliberately and of their premeditated malice." This instruction is clearly the law of this state. This court has held: "Where two or more persons conspire and combine together to commit an unlawful act, and in the prosecution of such common design one of the confederates commits a felonious homicide, each and all of such conspirators, as a matter of law, are guilty of such homicide." *Fields v. State,* 125 Neb. 290. In the opinion in the case last above mentioned, the rule is well set out as follows: "It is a familiar general rule that when several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for which they combine. Applying the principle to the subject under consideration, the courts hold that if several persons combine or conspire to do an unlawful act, and in the prosecution of the common object a culpable homicide results, all are alike criminally responsible. The immediate injury, from which death ensues, is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his

own; and all are equally criminal." Quoting from 13 R. C. L. 729, sec. 29.

The case of *Fields v. State,* hereinbefore mentioned, also quotes the following with approval: "If the unlawful act agreed to be done is dangerous * * * or if its accomplishment will necessarily or probably require the use of force and violence, which may result in the taking of life unlawfully, every party to such agreement will be held criminally liable for whatever any of his coconspirators may do in futherance of the common design. Accordingly, one person may be held liable for the homicidal act of another, where such act results from their combined efforts to commit robbery, burglary, breaking in and stealing, or assault merely." '13 R. C. L. 730, sec. 31.

Instruction No. 14 heretofore set out in full, follows this rule and is a correct statement of the law. The evidence is sufficient to support the giving of the instruction and the objection to it is without merit.

The defendant also complains of the conduct of the county attorney in his argument to the jury. It appears from the record that counsel for the defendant interposed several objections to the argument made by the county attorney, but nowhere in the record are the alleged prejudicial statements set out. If the alleged improper statements of the county attorney in his argument are not set forth in the record, this court is unable to say whether or not they were improper and prejudicial. Under such circumstances, the presumption must be that the trial court ruled correctly on the objections. In the case of *Jones v. Niagara Junction R. Co.,* 71 N. Y. Supp. 647, it was held: "Complaint was made that injustice resulted to the defendant because of the remarks of counsel in summing up the case. There is nothing to show what was said by the counsel to which the objections were taken, and therefore there is no reason to suppose that any injustice resulted. The presumption must be the other way." While this was a civil action, the rule is

just as applicable to a criminal proceeding. It has been the settled law of this state that error must affirmatively appear of record, and if the basis of the alleged error is not included in the record, it cannot be considered by this court on appeal. *Berg v. Griffiths,* 127 Neb. 501.

The defendant further contends that the verdict is not sustained by the evidence. Defendant argues that the bullet taken from the body of Luceen Marshall was fired from a rifle and that the defendant never had a rifle in his hands. It is true that defendant's companion Wray and officer Robbins were the only persons using rifles at the time of this unfortunate occurrence. Wray was using a .44 Winchester rifle. In view of the fact that it was clearly established by the evidence that the defendant, Rivette and Wray were associated together in the commission of an unlawful act, it is necessary for the state to show that one of the three fired the fatal shot in order to sustain the conviction. The evidence shows that the bullet taken from the body of Luceen Marshall was a .44 caliber rifle bullet and that defendant or his companions were the only ones shooting a .44 caliber rifle. The evidence also discloses that neither of the police officers used a .44 rifle that day.

At the time Luceen Marshall was shot, he was standing near the intersection of Twenty-fourth and O streets on the north side of O street. At the time he fell to the ground, the police car was about a block east of him and defendant's car was approximately a half block farther east from the police car. The defendant and his companions, or some of them, were firing toward the west at the police car and in the general direction of the deceased, while officer Robbins was shooting toward the Texas car in which defendant was riding and in the opposite direction from where deceased was standing. The evidence is quite conclusive that Luceen Marshall was killed by a .44 caliber bullet fired from the .44 rifle in the hands of either Dean, Rivette or Wray. It makes no difference which one actually did the shooting, as under the evidence

in this case all must answer for the homicide, the act of one being the act of all, and all would be equally guilty. The evidence clearly is sufficient to support the verdict.

There being no prejudicial error in the record, and the evidence being sufficient to sustain the verdict, the judgment of the district court is

AFFIRMED.