DARREL F. PARKER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

83 N. W. 2d 347

Filed May 17, 1957. No. 34091.

Kenneth R. Cook, Edgar E. Cook, William Drake, Max G. Towle, and Thomas J. McManus, for plaintiff in error.

Clarence S. Beck, Attorney General, and Homer G. Hamilton, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a criminal action wherein, in the district court for Lancaster County, Nebraska, Darrel F. Parker was charged with the crime of first degree murder. The action was prosecuted in the name of the State of Nebraska by the county attorney. On a trial of the case Parker was convicted of the charge and was sentenced to a term of life imprisonment in the State Penitentiary. A motion for new trial was filed which was overruled. By petition in error filed in this court he seeks a reversal of the conviction and sentence. He will hereinafter be referred to as the defendant.

Numerous alleged errors are assigned which the defendant insists are grounds for reversal. A question which is basic in the determination of the question of whether or not reversible error is present is advanced collectively by the first three assignments of error. This question relates to the admissibility in evidence of confessions. The three therefore will receive collective rather than separate consideration. The consideration of them requires a brief informative background.

On and for some time prior to December 14, 1955, the defendant with his wife, Nancy Parker, lived in a house

at 3200 Sumner Street, Lincoln, Nebraska. Some time before 12 o'clock noon of December 14, 1955, Nancy Parker came to her death at that address. Her death was reported by the defendant a few minutes after 12 o'clock noon. She had apparently been struck in the face. When she was found cords were tied around her throat and her hands had been tied behind her back with cords. Handkerchiefs had been placed in her mouth. The immediate cause of death was strangulation.

The funeral was held in Des Moines, Iowa. The defendant attended the funeral and thereafter until December 21, 1955, remained in that city. On December 20, 1955, the county attorney of Lancaster County, Nebraska, called the defendant and asked him to return to Lincoln, Nebraska, to aid in the investigation of the death of Nancy Parker. He was asked to report to the headquarters of the Nebraska Safety Patrol. He reported as requested on December 21, 1955, at about 11:30 a.m. At about 11:45 a.m. he met one John E. Reid in a room at the Safety Patrol headquarters where he was interviewed by Reid. This interview lasted until about 2:45 p.m. Thereafter he remained at the headquarters until about 6:30 p.m. when he was again interviewed by Reid until about 8 o'clock. At about 10:10 p.m. a court reporter came to the headquarters after which in response to questions asked by Reid, Parker admitted that he had killed Nancy Parker, his wife. The questions and answers were taken down in shorthand and transcribed by the reporter. The time of taking the questions and answers extended from about 10:10 p.m. to 10:57 p.m. The transcription was concluded about 12:30 a.m., December 22, 1955.

At about 11 p.m., December 21, 1955, the defendant confessed to the killing of his wife to Eugene Masters, a police officer of the city of Lincoln, and at 11:45 p.m. on that date he also confessed to Joseph T. Carroll, chief of police of the city of Lincoln. Neither of these was taken down in writing.

After the confession which was taken by the reporter was transcribed, the defendant, the reporter, Reid, and several others sat around a table and the transcription was read aloud by Reid. The defendant and others had been supplied with copies. After the reading and after corrections had been made by the defendant he signed it. He signed on each page of several copies.

All three of the confessions were admitted in evidence over objections of the defendant. The objection of importance made as to the written confession was that no proper and sufficient foundation had been laid for its admission in evidence. There were two substantial objections as to the other two. The first was that no proper and sufficient foundation, independent of the foundation for the written confession, had been made. The second was that the admissibility of these two was dependent upon the foundation for the written confession for which no proper and sufficient foundation had been laid, hence on that ground these were inadmissible.

The foundation which the defendant contends was absent was a sufficient showing that the confessions were within the meaning of the law voluntarily made.

A general statement of the rule as to admissibility of confessions, and one from which no departure has been found in the decisions of this court, is the following: "In a criminal trial a confession of guilt alleged to have been made by the defendant is not competent in evidence, unless first shown to have been voluntarily made." Jones v. State, 97 Neb. 151, 149 N. W. 327. See, also, Tramp v. State, 104 Neb. 222, 176 N. W. 543; Bush v. State, 112 Neb. 384, 199 N. W. 792; Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824; Schlegel v. State, 143 Neb. 497, 10 N. W. 2d 264; Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323; Kitts v. State, 151 Neb. 679, 39 N. W. 2d 283; Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1, affirmed 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86.

This rule is one of dual significance. Under one

application the court is called upon to determine on evidence, taken out of the presence of the jury if there is objection to taking it in the presence of the jury, whether or not it has been sufficiently shown that the confession was voluntarily made.

Under the other application if the court has found that a sufficient foundation has been laid then the jury under proper instructions is required to determine for itself whether or not on all the evidence, including the foundational evidence which the court considered, the confession was voluntarily made. Unless the jury finds beyond a reasonable doubt that it was voluntarily made its competency as evidence must be rejected.

As a basis for the first application the State is required to adduce evidence to show that the confession was voluntarily made. Its witnesses may be cross-examined, and in addition the defendant may adduce countervailing evidence. Stagemeyer v. State, *supra;* Schlegel v. State, *supra;* Kitts v. State, *supra.* This procedure was followed in the case at bar as to the written confession. As to the other two the foundational evidence was not adduced out of the presence of the jury. Objection was made but in effect withdrawn.

Under this application of the rule the court is not required, in order to allow a confession to be admitted in evidence, to consider the evidence and on the basis of weight determine the question of whether or not the confession was voluntarily made. The question is that of whether or not the affirmative evidence shows that the confession was voluntarily made and that this evidence excludes any other hypothesis. The rule is stated in Holthus v. State, 138 Neb. 200, 292 N. W. 603, as follows: "In laying a foundation in a criminal case for the admission of a confession in evidence, it is sufficient to establish affirmatively all that occurred immediately prior to and at the time of making the confession, provided such affirmative proof shows it to have been freely and voluntarily made and excludes the hypothesis

of improper inducements or threats." See, also, Kitts v. State, *supra;* Gallegos v. State, *supra.*

The affirmative evidence relating to what occurred is too voluminous to repeat or even to summarize herein. It does however establish that all of the commitments of the defendant with regard to the death of Nancy Parker were in his words; that no threats or promises were made to induce the statements made; that he was under no duress or compulsion at the time; that he was not under arrest; that at the time the transcription of the confession was read to and by him he was asked to examine for errors and to make corrections if he found any; and that he found a number of errors to which he called attention which he corrected in his own handwriting. It does establish that the defendant was questioned with intensity over two very considerable periods of time but this fails to support a hypothesis that his commitments in the confession were not freely and voluntarily made.

It is true that foundational or negative evidence adduced on behalf of the defendant was in conflict with the affirmative evidence, but for the purpose of determining foundation for admissibility under the rule in this jurisdiction only the affirmative evidence requires consideration.

In view of this it must be said that the court did not err in admitting in evidence the written confession. On the same substantial basis it must be said that no error was involved in the reception of the other two confessions.

This rule did not deprive the defendant of any right to have his guilt or innocence determined upon all of the facts and circumstances surrounding the act for which the defendant was being tried, including all of those incident to the confessions.

After the court determined on evidence taken out of the presence of the jury that foundation had been laid for admission of the confession in evidence, but before

submission of it to the jury, it became the duty of the county attorney to submit all of the evidence of foundation to the jury before the confession could properly be submitted.

This was done and in his turn the defendant submitted all of his countervailing evidence. In this manner the jury was permitted to weigh the evidence of the State and of the defendant on the question of whether or not the confessions were voluntary and by its verdict to make its finding thereon. This was in accord with legal principles which obtain in this jurisdiction.

In Kitts v. State, *supra,* it was said: "The question of whether or not in the first instance the State has laid a proper and sufficient foundation for the admission of such evidence is one of law for the court, and if the court determines as a matter of law that no sufficient foundation has been laid then the confession should be rejected, but where the confession is received in evidence, its voluntary character is still a question of fact to be determined by the jury." See, also, Cramer v. State, *supra;* Gallegos v. State, *supra.*

The question of whether or not the jury, in the event of the admissibility and admission into evidence of the confessions, was justified in finding that they were voluntarily made does not require consideration in this opinion. The sufficiency of the evidence to sustain a finding by the jury that foundation had been laid is not challenged by any assignment of error. Also the brief of the defendant contains no assignment of error which challenges the sufficiency of the evidence to sustain the verdict.

By the fourth assignment of error the defendant calls attention to the fact that in instruction No. 15 the court employed the term "persons in authority" without explanation, and that this was prejudicial error.

The term was employed at three different places in the instruction, which instruction directs the jury as to the manner in which it should approach, consider, and de-

termine whether or not a proper foundation had been laid for the admission of the confessions in evidence. In each instance it was cautionary coupled with other cautionary direction. Substantially the particular caution of the first two was that the jury could not find that the confessions were voluntarily made unless they found that they were not procured or induced by promises made by "persons in authority." The third pointed out that the fact that questions were propounded by persons in authority would not of necessity render the confessions inadmissible.

The theory appears to be that by the use of these words the jury was told that the element of procurement or inducement by promises was limited to persons in authority. We cannot so regard it in the light of all of the cautionary provisions of the instruction. It can only be said reasonably that these words are calculated to make specifically applicable to "persons in authority" that which has been made applicable to persons in general by the cautionary instruction.

By the fifth assignment of error it is contended that the court failed to instruct the jury that the burden was on the State to establish that the written confession was voluntarily made. The contention is without merit. In truth by instruction No. 15 the jury was clearly and unequivocally so instructed.

By the sixth assignment of error it is contended that the court failed to instruct the jury on the theories of the defense. In the briefs it is not pointed out with any degree of particularity wherein the court so failed. No instructions in this area or in any other area were requested. Careful examination fails to disclose any such failure. The conclusion reached is that there was no such failure.

By the seventh assignment of error the contention is made that the jury should have been instructed that if it was found that the written confession was involuntary that the oral confessions should be rejected

and disregarded. No case has been cited to sustain this abstract contention.

As it has been pointed out in Leyra v. Denno, 347 U. S. 556, 74 S. Ct. 716, 98 L. Ed. 948, where successive confessions have been made in truth and in fact on a single foundational basis and one has been rejected on the ground that it was not voluntarily made, the others should be rejected on the same basis. No case has been cited and none has been found the effect of which is to say that where, as in this case, the confessions rest upon different foundations that a jury should be told that if it found that the foundation for one failed the others should be rejected.

In this case by instruction No. 15 the confessions and their foundations were in essence submitted properly for separate consideration.

A fellow worker of Nancy Parker was called as a witness for the prosecution who was permitted over objection to describe Nancy Parker's apparent general attitude for a period before and particularly on the day before her death. This did not include conversations relating either to herself or to the defendant. The defendant by the eighth assignment of error urges that this was prejudicial error.

We think this evidence should not have been admitted since it was in no way related to or attempted to be related to any attitude of her to the defendant or of the defendant to her, or to what occurred on December 14, 1955. In 26 Am. Jur., Homicide, § 361, p. 405, it is said: "Generally speaking, however, it is only under exceptional circumstances that evidence of the conduct, acts, and utterances of the deceased becomes relevant and admissible. Ordinarily, what he may have done or said previous to the homicidal act and unconnected therewith is too remote to be considered." While this evidence was inadmissible under this general rule we are unable to see how it could have prejudiced the defendant.

Frank H. Tanner, a physician, went to the residence of

the defendant on December 14, 1955, after Nancy Parker was found. He made what appears to have been a superficial examination which included an examination of the legs. Later at the hospital he made a further examination. He was called as a witness and after testifying as to the examination made at the residence and giving information that he had further examined her at the hospital he was asked to and did give his opinion as to the length of time she had been dead at 1:30 p.m. on December 14, 1955. The defendant called a doctor, who, on the basis of a hypothetical question which included an assumption of facts testified to by Dr. Tanner, gave his opinion as to the time prior to 1:30 p.m. Nancy Parker died. The assumption however did not include a reference to the testimony of Dr. Tanner that he had made a further examination at the hospital as a basis for his opinion. This opinion differed from the opinion of Dr. Tanner. Dr. Tanner was called in rebuttal and at that time he substantially testified more fully as to the later examination and that his opinion as to the time of death related to both rather than to the earlier examination alone.

The defendant by the ninth assignment of error urges that this was evidence-in-chief and that it was error to allow it to be adduced in rebuttal. He insists substantially that it was prejudicial because the witness for the defendant was not allowed to consider it in arriving at his opinion, which prejudice could not be overcome since the witness for the defendant was no longer available.

The testimony was merely elucidative of evidence already given by the witness in the case-in-chief the purport of which had not been properly reflected by the hypothesis presented by the defendant to his witness. In the strict sense this was not rebuttal but since it cannot be observed that it was prejudicial to the defendant the court did not abuse its discretion in admitting it.

In Drewes v. State, 156 Neb. 319, 56 N. W. 2d 113, it was said: "It is within the discretion of the court to permit in rebuttal the introduction of evidence not strictly rebutting." See, also, Hampton v. State, 148 Neb. 574, 28 N. W. 2d 322.

The next assignment of error to be considered is the twelfth. By the assignment it is urged that the county attorney was guilty of misconduct in the cross-examination of Dr. R. B. H. Gradwohl, a witness for defendant. From the argument it appears that the complaint is that questions were asked which were not gone into and were foreign to the matters inquired about on direct examination. It is not urged that the court erred in rulings but only that the county attorney was guilty of misconduct in his inquiries.

There is nothing whatever in the questions to which reference is made in the briefs which could on their face or otherwise be regarded as prejudicial even if the cross-examination was not proper. The witness was from St. Louis, Missouri, and testified as an expert. Certain articles were taken to him by a Mr. Harris for examination before he was called to testify. On cross-examination the witness was asked: "Q Did he (Mr. Harris) bring something down there for you to examine? A Yes. Q What was that? A He brought down some exhibits, I suppose you would call them. Q What were they? A He brought down blood of the defendant." At that point there was an interruption as follows: "MR. COOK: Just a moment, your Honor." This was followed by the following question by the county attorney: "Q What else?" At that point objection was made that this was not cross-examination. The objection was sustained. One more question was asked as follows: "Q Did he bring down a quilt?" Objection to this was made and sustained.

By the thirteenth assignment of error the defendant urges that Dr. Gradwohl was prejudicially restricted in his direct examination. After having a hypothetical

question propounded to him Dr. Gradwohl was asked if he had an opinion as to the time of death of Nancy Parker. He replied in the affirmative. He was then asked: "Q Will you explain it?" He started an answer which on motion was stricken on the ground that the answer was not responsive. Whether or not the ruling was proper at the time is unimportant, for the reason that immediately following this the witness was allowed to express his opinion and to explain his reasons therefor in great detail. The assignment is without merit.

By the fourteenth assignment of error the defendant contends that the court erred in denying his right to examine contents of the stomach of Nancy Parker after an examination of a portion of such contents had been made on behalf of the State. This leave was denied on February 14, 1956.

The rule which we think should be applied in a situation such as is presented here is the one generally applicable in the case of request for examination of documentary evidence as follows: "In a criminal case the trial court is invested with a broad judicial discretion in allowing or denying an application to require the state to produce written confessions, statements and other documentary evidence for the inspection of defendant's counsel before the trial. Error may be predicated only for an abuse of such discretion." Cramer v. State, *supra*.

Whether or not however the court in the first instance abused its discretion in denying the motion does not become important since a submission of contents of the stomach was afforded during the course of the trial and evidence was given in regard thereto. There is nothing in the record to indicate that the results obtained were any different from what would or could have been obtained from an earlier examination. In this light if there was error it was without prejudice.

By the eleventh assignment of error the defendant urges that the court erred in refusing to admit in evidence on behalf of the defense the result of polygraph

tests of the defendant made by one Dr. Douglas M. Kelley.

Dr. Kelley was called as a witness by the defendant and during the examination the court was informed that questions would be propounded the purpose of which would be to lay a foundation for conclusions to be drawn from a polygraph examination. The county attorney objected to such questioning on the substantial ground, among others, that under the decisions of this court the results of polygraph tests were not admissible in evidence. The objection was based upon the following from Boeche v. State, 151 Neb. 368, 37 N. W. 2d 593: "The polygraph, commonly known as a lie detector, used for determining the truthfulness of testimony has not yet gained such standing and scientific recognition as to justify the admission of expert testimony deduced from tests made under such theory."

The question was not immediately ruled upon. The witness was examined at great length and in great detail in the area relating to foundation for admissibility of testimony of one who had made tests with a polygraph. At the conclusion of this evidence as to foundation the objection of the county attorney was sustained.

Of course if we are not to depart from what was said in Boeche v. State, *supra,* and we think we should not do so, the objection was properly sustained.

If however the disposition should be to depart from the former pronouncement, it could not well be said in any event that the ruling was, on the record, prejudicial. After the ruling was made the witness was asked no question the purport of which was to elicit from him any information as to test or tests made, results obtained or observed, or opinion or conclusion of the witness flowing therefrom. Also there was no offer to prove anything in these areas. The rule applicable is the following: "When on direct examination an objection to a question is interposed by the adverse party and sustained, there must be an offer of proof of the facts

sought to be put in evidence by the question in order to present the ruling to this court for review." Huckfeldt v. Union Pacific R. R. Co., 154 Neb. 873, 50 N. W. 2d 110. See, also, Dean v. State, 128 Neb. 466, 259 N. W. 175; Employers Mutual Casualty Co. v. Brazda, 152 Neb. 633, 42 N. W. 2d 195.

The fifteenth, sixteenth, and seventeenth assignments of error deal with three phases of alleged misconduct. One has reference to misconduct of spectators, one to Audrey Wheeler, a State's witness, and the third to the county attorney. Only the one relating to the county attorney requires any consideration beyond calling attention to the fact that nothing relating to the other two is sustained by anything affirmatively appearing on the record. This court said in Shaffer v. State, 123 Neb. 121, 242 N. W. 364: "To make error in a trial available for a reversal in the appellate court it should be called to the attention of the district court and be affirmatively shown on the record for review." See, also, Buck v. Zimmerman, 144 Neb. 719, 14 N. W. 2d 335; State ex rel. League of Municipalities v. Loup River Public Power Dist., 158 Neb. 160, 62 N. W. 2d 682.

As to the county attorney only one phase of misconduct requires attention here. In his opening argument to the jury the county attorney made a remark to the jury, the tenor of which does not require repetition here, which on its face could have been regarded as prejudicial. In the light of subsequent events disclosed by the record it appears that it flowed from a misunderstanding of the record. Exception was taken to the remark and the county attorney frankly admitted his error. Exception was taken to the remark but it is to be noted that a mistrial was not requested. The request in relation thereto was the following: "* * * and the defendant requests the Court at this time to admonish the jury that such fact did not appear as a matter of record and should be disregarded." The court admonished the jury as follows: "* * * you are admonished

to disregard the statement made by the County Attorney and which was objected to by Mr. Cook. Disregard it completely." All of this appears in the bill of exceptions.

Under the pronouncement made by this court in Argabright v. State, 62 Neb. 402, 87 N. W. 146, as follows, it must be said that this assignment does not present grounds for reversal: "Where counsel for the state refered in argument to the jury to facts not in evidence, and upon objection that the statements were unwarranted by the evidence the district court instructed the jury to disregard such statements, there was left no ground for complaint, for the reason that the court, when appealed to, granted all relief prayed for." See, also, Hoover v. State, 48 Neb. 184, 66 N. W. 1117; Hukill v. State, 109 Neb. 279, 190 N. W. 867; Cooper v. State, 120 Neb. 598, 234 N. W. 406.

The assignment of error remaining for consideration is the tenth. By this assignment the defendant urges that the court erred in sustaining the State's motion to dismiss the amendment to defendant's motion for new trial. The amendment was filed June 1, 1956, which was on the 29th day after the verdict.

Section 29-2103, R. R. S. 1943, provides that a motion for new trial shall be filed within 10 days after a verdict is rendered. There are exceptions to the rule but none of them have any application in this case. The statute by its terms is mandatory. Prior to 1947 the period was 3 days. In 1947 the period was extended to 10 days. Before the amendment this court held the statute fixing the time for filing a motion for new trial was mandatory and that the court was without jurisdiction to permit an amendment to a motion after the expiration of the time fixed by the statute. McCoy v. State, 110 Neb. 360, 193 N. W. 716. See, also, Carlsen v. State, 129 Neb. 84, 261 N. W. 339. No reason is apparent why an attitude different from the one applied to the 3-day limitation should attach to the later and more extended limitation. This conforms to the expression of

this court with regard to a like limitation contained in section 25-1143, R. R. S. 1943, on the right to file motion for new trial in civil cases. In Klause v. Nebraska State Board of Agriculture, 150 Neb. 466, 35 N. W. 2d 104, it was said: "A motion for new trial not filed in conformity with section 25-1143, R. S. Supp., 1947 (section 25-1143, R. R. S. 1943), as to time may not be considered by this court on review." The holding therefore is that the limitation of 10 days is mandatory. In this light the assignment of error must be said to be without merit.

From a full consideration of the record in this case no reversible error has been found. The judgment of the district court is therefore affirmed.

AFFIRMED.