THOMAS SULLIVAN V. STATE OF NEBRASKA.

FILED JUNE 21, 1899. No. 10641.

1. **Instructions:** OBJECTIONS: REVIEW. Objections to instructions not brought to the attention of the district court by a motion for a new trial cannot be successfully urged in this court.

2. **Criminal Law:** CONFESSIONS: CORROBORATION. One cannot be convicted of a felony upon his own unsupported extra-judicial confession that a crime has been committed. Such confession may be sufficient to prove the defendant's connection with the criminal act, but there must in all cases be proof *aliunde* of the essential facts constituting the crime.

3. ———: ———: ———. But, while a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, it is competent evidence of that fact, and may, with slight corroborative circumstances, be sufficient to warrant a conviction.

4. ———: ———: CIRCUMSTANTIAL EVIDENCE. Circumstances capable of an innocent construction may be interpreted in the light of the defendant's confession, and the fact under investigation be thus given a criminal aspect.

5. ———: DECLARATIONS. A declaration may be a part of the *res gestæ* without being precisely coincident with the main transaction. It is sufficient that there was between the two an immediate casual relation, and that the statement was a spontaneous characterization of the act.

6. ———: ———: Res Gestæ: Homicide. The accused procured a revolver in a saloon, went about fifty feet, fired a shot and killed a man, ran back to the saloon, threw the revolver on the floor, and exclaimed, "My God! I have killed Tom Kirkland, my best friend," then hurried back to the dying man, raised his head, and again declared that he had shot his best friend, and that he would be hanged. *Held*, That such declarations constituted parts of the *res gestæ*, and were legitimate, independent evidence of the homicidal act.

Error to the district court for Douglas county. Tried below before Slabaugh, J. *Affirmed.*

*William F. Gurley* and *Lee S. Estelle*, for plaintiff in error:

Confession without proof of *corpus delicti* will not support a conviction. (*Commonwealth v. Ackert*, 133 Mass. 402; *Matthews v. State*, 55 Ala. 187; *Williams v. People*, 101 Ill. 382; *Priest v. State*, 10 Neb. 393; *People v. Hennessey*, 15 Wend. [N. Y.] 147; *Stringfellow v. State*, 26 Miss. 157.)

*C. J. Smyth, Attorney General*, and *W. D. Oldham, Deputy Attorney General*, for the state.

Sullivan, J.

On an information charging him with the crime of murder Thomas Sullivan was tried, convicted, and sentenced to imprisonment in the penitentiary for a period of eleven years. Of the errors assigned the sufficiency of the evidence to sustain the verdict is the only one properly before us for consideration. The action of the court in giving and refusing certain instructions is called in question and discussed by counsel at considerable length, but the point was not raised in the motion for a new trial and cannot be successfully urged for the first time in this court. The substance of the accusation against the defendant is that, with premeditation and malice, he shot and killed one Thomas Kirkland. On the trial the truth of the charge was shown by the prisoner's voluntary confessions made to police officers on the night of the tragedy.

It is now contended that such confessions were the only proofs of the *corpus delicti*, and that they were not competent evidence of that fact. We do not assent to either proposition. Independent of the deliberate and voluntary confessions, the salient facts disclosed by the record are: That on the night in question Sullivan became involved in a quarrel with some colored men near the Tenth street viaduct, in the city of Omaha; that while the broil was in progress he ran into the saloon of Walter Brandise, obtained a revolver, and ran out again, declaring that he intended to kill "a black nigger;" that he ran north to the alley; that just across the alley a man, who afterwards proved to be Kirkland, was seen walking south; that there was the flash and report of a pistol; that the man walking south fell on the sidewalk, where he was immediately after found dead; that just after the shot was fired Sullivan ran back to the saloon, threw the revolver on the floor, and exclaimed, "My God! I have killed Tom Kirkland, my best friend," or words to that effect; that he then hurried back to the dying man, raised his head, and again declared that he had shot or killed his best friend and that he would be hanged. No person, other than Kirkland and Sullivan, was seen on the street or in the vicinity at the time the shot was fired. There was no direct evidence of any wound upon the body of the deceased, and the circumstances above detailed, together with the prisoner's subsequent confession that he shot him under the impression that he was a negro, constitute the whole of the evidence tending to show that death was the result of a gunshot wound.

In this case the elements of the *corpus delicti* are, first, the death of Thomas Kirkland; and second, the criminal agency of some one, not necessarily the defendant, in causing such death. (*People v. Palmer*, 109 N. Y. 113; *Carlton v. People*, 150 Ill. 181; *State v. Jones*, 106 Mo. 302; *People v. Simonsen*, 107 Cal. 345; *Johnson v. Commonwealth*, 29 Gratt. [Va.] 796.) The uniform doctrine of the American courts is that a conviction for felony will not be sus-

tained when the only evidence of guilt is the extra-judi-
cial confession of the defendant that a crime has been
committed. His confession may be sufficient to prove his
own connection with the alleged criminal act, but there
must in all cases be proof *aliunde* of the essential facts
constituting the crime. (*Priest v. State*, 10 Neb. 393;
*Smith v. State*, 17 Neb. 358. See, also, 6 Am. & Eng. Ency.
Law [2d ed.] p. 581, where the cases are collected.) But
while a voluntary confession is insufficient, standing
alone, to prove that a crime has been committed, it is,
nevertheless, competent evidence of that fact, and may,
with slight corroborative circumstances, establish the
*corpus delicti* as well as the defendant's guilty participa-
tion. Discussing this question Nelson, C. J., in *People v.
Badgley*, 16 Wend. [N. Y.] 53, said: "Full proof of the
body of the crime, the *corpus delicti*, independently of the
confession, is not required by any of the cases; and in
many of them slight corroborating facts were held suf-
ficient." The doctrine of this case was distinctly ap-
proved in *People v. Jaehne*, 103 N. Y. 182, where it was
held that equivocal circumstance offered as proof of the
*corpus delicti*, might be interpreted in the light of the
prisoner's confession and the fact under investigation be
thus given a criminal aspect. In *State v. Hall*, 31 W. Va.
505, the court, considering this question, said: "We know
of no decisions anywhere that hold the admissions of the
defendant are not competent evidence tending to prove
the *corpus delicti*, but they certainly are competent evi-
dence tending to prove that the crime charged has been
committed." It has often been held in cases where
there was no direct proof of the crime, as in prose-
cutions for adultery and trials for homicide where
the body of the deceased had not been found, that
the defendant's extrajudicial confession, in connection
with other incriminating circumstances, would warrant
a conviction. (*Ryan v. State*, 100 Ala. 94; *State v. Lamb*,
28 Mo. 218; *State v. Patterson*, 73 Mo. 695; *Common-
wealth v. McCann*, 97 Mass. 580; *United States v. Williams*,

1 Cliff. [U. S.] 20; *United States v. Gilbert*, 2 Sum. [U. S.]
19; *Commonwealth v. Tarr*, 4 Allen [Mass.] 315.) We
think that if every statement and declaration of Sullivan
were regarded as being nothing more than a confession
of his criminal agency in producing the death of Kirk-
land, the verdict would still be sustained by sufficient
proof.    But some of the declarations of the defendant
were certainly substantive evidence of the fact declared,
considered entirely apart from the circumstance that
they were admissions against interest.    They were parts
of the *res gestæ*, events incident to the main transaction;
they were concomitant acts speaking through the prin-
cipal actor.    In point of time they were closely related
to the homicide, and between it and them there was an
immediate casual relation.    "*Res gestæ*," says Wharton,
"are events speaking for themselves, through the instinct-
ive words and acts of participants, not the words and
acts of participants when narrating the events.    What is
done or said by participants, under the immediate spur
of a transaction, becomes thus part of the transaction,
because it is then the transaction that thus speaks."
(Wharton, Criminal Evidence [8th ed.] sec. 262.)    To de-
termine what declarations come properly within the *res
gestæ* is sometimes a matter of great difficulty.    There
appears to be no arbitrary time limit, but the authori-
ties are agreed that competency in all cases depends upon
the declaration being substantially coincident with the
fact from which it springs and of which it is explanatory.
(2 Jones, Evidence sec. 351.)    That the language used is
narrative in form and refers to past events is not alone
sufficient to condemn it as hearsay.    In *Commonwealth v.
Hackett*, 84 Mass. 136, the declaration of a man after
leaving his room where he had been stabbed was received
in evidence, although his assailant had fled before the
declaration was made.    In *Lambert v. People*, 29 Mich. 71,
the complaint of a person who had been robbed was held
to be competent, although made in the absence of the
defendant some three minutes after the robbery.    In

*People v. Simpson*, 48 Mich. 474, which was a homicide case, it appeared that a woman had been shot while walking on the street. A person living a block distant on the opposite side of the street heard the report and ran to her immediately. What the deceased then said implicating the defendant was held to be part of the *res gestæ*. In *State v. Walker*, 78 Mo. 380, the excited utterance of a by-stander, made the moment after a shot was fired which killed one of the parties to an affray, was held to be admissible as illustrative of the act which gave rise to the exclamation. In *Missouri P. R. Co. v. Baier*, 37 Neb. 235, the court received as part of the *res gestæ* an account of a railroad accident given immediately after its occurrence by the person whose injuries were the subject of the suit. The doctrine of the case is stated in the syllabus as follows: "A declaration to be part of the *res gestæ* need not necessarily be coincident in point of time with the main fact proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause." Tested by the rule thus stated, especially when such rule is considered in connection with the facts to which it was applied, it is quite clear that the declarations of Sullivan in the saloon and while holding the dead body of Kirkland were parts of the *res gestæ* and so legitimate independent evidence of the homicidal act. While the failure of the public prosecutor to make strict proof of the fatal wound merits judicial reprobation, it is not alone sufficient to require a reversal of the sentence. Every material averment of the information is supported by competent and adequate proof; and the judgment is, therefore,

AFFIRMED.