AGAPITA GALLEGOS, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
43 N. W. 2d 1

Filed June 15, 1950.    No. 32781.

*Mothersead, Wright & Simmons*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *Homer L. Kyle*, for defendant in error.

Heard before CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

A jury in the district court for Scotts Bluff County found the defendant, Agapita Gallegos, guilty of manslaughter. His motion for a new trial was overruled and he was sentenced to serve ten years in the penitentiary. To review the record of his conviction and sentence the defendant has instituted this error proceeding.

For convenience we shall refer to the plaintiff in error as the defendant.

Defendant contends that the corpus delicti, which means that a crime has actually been committed, has not been established. Corpus delicti is composed of two elements, the fact or result forming the basis of the charge and the existence of a criminal agency as the cause thereof. 23 C. J. S., Criminal Law, § 916, p. 181. "Homicide corpus delicti is not established until it is proved that a human being is dead, and the death occurred as the result of the criminal agency of another." Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539.

The confessions of the defendant, the first on September 23, 1949, and the second on October 1, 1949, fully detail the crime and its commission. Defendant therein confessed that in the early part of October 1948, while Mrs. Genovesa Carrillo was living with him and his two children in a tenant house located on a farm near Minatare in Scotts Bluff County, Nebraska, he got into an argument with her; that the argument started while they were getting ready to retire; that while arguing he picked up a piece of stove wood; that he hit her with this piece of wood, the blow being on the head and just behind the left ear; that when struck she fell to the floor in a sort of dazed condition but continued to talk; that while she was on the floor he hit her twice with the same piece of wood and in about the same place; that some blood flowed from her head and formed a spot on the floor; that she died from the blows; that this all took place in the east room of the two-room tenant house in which they were living; that he buried her the next day, just

after dark, at a point east of the tenant house; that he dug the grave north and south, placing her with her head to the north; that he wrapped her body in a blanket and placed a handkerchief in her mouth to keep the dirt from getting in; and that she had on one of his overalls and a lady's shirt, but no shoes.

We said in Sullivan v. State, 58 Neb. 796, 79 N. W. 721, that: "The uniform doctrine of the American courts is that a conviction for felony will not be sustained when the only evidence of guilt is the extra-judicial confession of the defendant that a crime has been committed. His confession may be sufficient to prove his own connection with the alleged criminal act, but there must in all cases be proof aliunde of the essential facts constituting the crime."

As stated in 23 C. J. S., Criminal Law, § 916, p. 182: "The corpus delicti cannot be presumed, but must be established by evidence sufficient to show the commission of a crime. Extrajudicial admissions or confessions of the accused are not alone sufficient to establish the corpus delicti, but ordinarily may be considered in connection with other evidence in the establishment thereof."

See, also, Cryderman v. State, 101 Neb. 85, 161 N. W. 1045; Egbert v. State, 113 Neb. 790, 205 N. W. 252; Limmerick v. State, 120 Neb. 558, 234 N. W. 98; Whomble v. State, 143 Neb. 667, 10 N. W. 2d 627; Clark v. State, 151 Neb. 348, 37 N. W. 2d 601; Reyes v. State, supra.

However, as stated in 23 C. J. S., Criminal Law, § 916, p. 184: "* * * although there is authority which holds that the corpus delicti must be established by independent evidence alone and the extrajudicial statements, admissions, or confession of accused cannot be used in aid of the establishment of any necessary element thereof, as a general rule it is not required that the corpus delicti shall be established by independent evidence alone. Extrajudicial admissions, declarations, or confessions of accused may be considered in connection with other in-

dependent evidence in determining whether the corpus delicti is sufficiently proved; and it is sufficient when the evidence independent of the confession, together with the confession, establishes the corpus delicti. It is not required that the suppletory evidence be conclusive in its character; and slighter evidence of the corpus delicti is sufficient for its establishment where the commission of the crime has been confessed by accused; but it is necessary that there be such extrinsic corroborative circumstances· as will, taken in connection with the confession, produce a conviction of guilt."

That we have followed this general rule is evidenced by many holdings of this court. After stating the foregoing, quoted from Sullivan v. State, *supra,* the court therein went on to say: "But while a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, it is, nevertheless, competent evidence of that fact, and may, with slight corroborative circumstances, establish the corpus delicti as well as the defendant's guilty participation. Discussing this question Nelson, C. J., in People v. Badgley, 16 Wend. (N. Y.) 53, said: 'Full proof of the body of the crime, the corpus delicti, independently of the confession, is not required by any of the cases; and in many of them slight corroborating facts were held ·sufficient.' The doctrine of this case was distinctly approved in. People v. Jaehne, 103 N. Y. 182, where it was held that equivocal circumstance offered as proof of the corpus delicti, might be interpreted in the light of the prisoner's confession and the fact under investigation be thus given a criminal aspect. In State v. Hall, 31 W. Va. 505, the court, considering this question, said: 'We know of no decisions anywhere that hold the admissions of the defendant are not competent evidence tending to prove the corpus delicti, but they certainly are competent evidence tending to prove that the. crime charged has been committed.' It has often been held in cases where there was no direct proof of the crime, as in prosecutions for adultery and trials for

homicide where the body of the deceased had not been found, that the defendant's extrajudicial confession, in connection with other incriminating circumstances, would warrant a conviction. (Ryan v. State, 100 Ala. 94; State v. Lamb, 28 Mo. 218; State v. Patterson, 73 Mo. 695; Commonwealth v. McCann, 97 Mass. 580; United States v. Williams, 1 Cliff. (U. S.) 20; United States v. Gilbert, 2 Sum. (U. S.) 19; Commonwealth v. Tarr, 4 Allen (Mass.) 315.)"

"The rule that the corpus delicti cannot be proved by the confession of the defendant is true as a general proposition, yet confessions or admissions may be considered in connection with the other evidence to establish the corpus delicti. It is not necessary to prove the corpus delicti by evidence entirely independent and exclusive of the confession or admissions. Groover v. State, 82 Fla. 427; 26 A. L. R. 380; 17 R. C. L. 64, sec. 69." Limmerick v. State, *supra.*

This principle has often been reaffirmed by this court. See, Egbert v. State, *supra;* Whomble v. State, *supra;* Clark v. State, *supra.*

Other than the confessions there is evidence that defendant, an illiterate Mexican beet field worker about 38 years of age, returned to Nebraska from Mexico shortly after Christmas 1947; that he had with him at that time his son, about 10 years of age, his daughter, about 13 years of age, and a Mexican woman between 35 and 40 years of age by the name of Mrs. Genovesa Carrillo, who he held out as his wife; that in April 1948 he obtained employment with a farmer by the name of Carl Mowry who lived about 15 miles northeast of Scottsbluff and moved into a tenant house on his farm; that defendant and Mrs. Carrillo were having trouble between themselves because she didn't always stay with him but moved around and lived with others; that because of this condition Carl Mowry made them leave his farm; that in September 1948 he obtained employment with Alex Bauer to help harvest beets;

that the Alex Bauer farm is located 6 miles east and ¾ mile north of Scottsbluff in Scotts Bluff County, Nebraska; that in the first part of October 1948 defendant, with his children and this woman, then moved into a two-room tenant house on the Bauer farm; that beginning sometime in October Bauer did not see the woman around the place; that about the middle of the month, when defendant and his two children were in the field, Bauer asked defendant where she was; that defendant waved his hands in a manner which Bauer took to mean that she was gone; that thereafter Bauer did not see her again; that defendant, with his two children, stayed at the Bauer place until the last of October 1948; that thereafter defendant, with his two children, left the Bauer place and worked for Paul Franco for about a week; and that shortly thereafter they, defendant and his two children, left for Mexico.

Mrs. Genovesa Carrillo is described as a Mexican woman about 35 to 40 years of age, 5 feet 1 or 2 inches in height, and weighing about 140 pounds. That she was fairly light complected for a woman of that nationality and had dark brown wavy hair of average length.

There is also evidence that on September 23, 1949, the authorities of Scotts Bluff County went out to the farm located 6 miles east and ¾ mile north of Scottsbluff and at a point east of the two-room tenant house, which defendant had occupied while working for Alex Bauer, they discovered a grave; that they did not remove the body from the grave on that day but came back on the 24th and then uncovered it and caused it to be lifted therefrom; that the body was buried with its head to the north; that it apparently had been wrapped in a blanket when buried; that it was in such condition that it could be removed from the grave in one piece; that the hair of the corpse was dark brown, wavy, and longer than that of a man; that it appeared to be the hair of a woman; that the body had on overalls but no

shoes; that it appeared to be the body of a lady of Mexican or Spanish origin; and that there was observed a dark brown stain or spot on the floor in the east room of the tenant house at the place where defendant pointed out she had fallen when hit and where she had bled.

We think this evidence, together with the confessions, is sufficient to establish the corpus delicti and that defendant was guilty, beyond a reasonable doubt, of the crime of which he has been convicted and for which he has been sentenced.

Defendant also contends that the court erred in admitting in evidence the confessions of September 23, 1949, and October 1, 1949, already referred to, and the evidence of his admission of guilt made at the preliminary hearing on the complaint had in the county court for Scotts Bluff County on October 13, 1949. This contention is based on the fact that they were involuntarily made. If that be true the contention is well made but, on the contrary, if they were voluntarily made it needs no citation of authorities to state that they were admissible and properly for consideration by the jury.

As to the determination of that issue we said in Kitts v. State, 151 Neb. 679, 39 N. W. 2d 283, that:

"In laying a foundation in a criminal case for the admission of a confession in evidence, it is sufficient to establish affirmatively all that occurred immediately prior to and at the time of making the confession, provided such affirmative proof shows it to have been freely and voluntarily made and excludes the hypothesis of improper inducements or threats.

"The question of whether or not in the first instance the State has laid a proper and sufficient foundation for the admission of such evidence is one of law for the court, and if the court determines as a matter of law that no sufficient foundation has been laid then the confession should be rejected, but where the confession is received in evidence, its voluntary character is still

a question of fact to be determined by the jury."

We shall not set out all the detailed facts as they relate to this issue as the record is voluminous and it would serve no useful purpose. Chronologically the evidence discloses the defendant was arrested by the authorities of El Paso County, Texas, on Monday, September 19, 1949, while he was working on a farm near Ysleta, Texas. At that time he gave an assumed name and professed not to know anyone by the name of Agapita Gallegos. He was taken into custody because of information given the authorities by the Immigration Department. Defendant was committed to the jail at El Paso and questioned on that day and again on the following day, Tuesday, September 20, 1949. He was again questioned on Thursday, September 22, 1949. At that time he admitted his identity and that he had previously been in Nebraska. He was again questioned on Friday, September 23, 1949. At that time he made the confession which has already been referred to. On September 27, 1949, defendant was turned over to the authorities of Scotts Bluff County, Nebraska, he having voluntarily signed a waiver of extradition. He was thereupon returned to Nebraska, arriving in the early morning of September 29, 1949. He was immediately committed to the jail at Scottsbluff under a complaint filed against him on September 24, 1949, charging him with first degree murder.

During the time defendant was held in jail at El Paso no charges were filed against him in any state court nor was he brought before any magistrate. He was not represented by counsel and had not asked to be.

After defendant was returned to Nebraska the authorities of Scotts Bluff County talked to him on October 1, 1949, and he made the confession already referred to as having been made on that date. He was held in jail at Scottsbluff until October 13, 1949, before being brought before the county judge for preliminary hearing. The complaint of first degree murder filed against

him on September 24, 1949, was dismissed on October 12, 1949, and a new complaint charging him with second degree murder was filed against him on that date. The latter is the complaint on which preliminary hearing was had. Defendant was not represented by counsel at the preliminary hearing or at any time prior thereto and the record discloses that he never asked to be. However, subsequent thereto he was at all times represented by counsel appointed by the court.

While there is testimony given by the defendant from which the jury could have found that the confessions made were involuntary due to the manner in which defendant was held in confinement, the treatment received while so held, and the threats made; however, the testimony of the authorities in charge, both at El Paso and Scottsbluff, deny these facts and when their testimony is taken together with certain testimony of the defendant, it presents a factual situation from which the jury could properly find that the confessions were freely and voluntarily made. This includes the issue presented by the evidence offered as to whether or not the complaint was properly translated at the preliminary hearing so it was understood by the defendant in making his plea thereto. It also includes the question of whether or not he understood the nature or degree of the crime with which he was charged. These issues both relate themselves directly to the question of whether or not he understood what he was doing when he made his admission of guilt and consequently relate directly to whether it was voluntarily or involuntarily made.

In regard to how soon after a person is arrested he must be given a preliminary hearing we said in Maher v. State, 144 Neb. 463, 13 N. W. 2d 641: "The question as to the time in which the defendant should be given a preliminary hearing is a question for the court. There can be no precise length of time, after the arrest of a person, in which he must be given a hearing. The theory of the law is that he must be given a hearing

as soon as possible. A person charged should be given a preliminary hearing just as soon as the nature and circumstances of the case will permit."

As already stated the testimony as to what took place during the time defendant was held in custody both in the El Paso jail and that in Scottsbluff is voluminous and detailed. It sets forth all the facts as they relate to the taking of the two confessions and the admission of guilt at the preliminary hearing. This is the proper foundation for their admission. The question of whether or not the foundation laid for their admission is sufficient is, in the first instance, one of law for the court. Here the court, in the first instance, heard all of the evidence relating thereto and determined that sufficient foundation had been laid for their admission. The evidence was then presented to the jury and the question as to their character, whether voluntary or involuntary, was submitted to it by the court's instructions Nos. 12, 13, and 14. We find the facts and circumstances relating to the giving of the two confessions and the admission of guilt at the preliminary hearing justified the trial court in admitting them in evidence in the first instance and submitting their character, whether voluntary or involuntary, to the jury. See Kitts v. State, *supra.*

The defendant does not understand our language and an interpreter was always used except in those instances where the El Paso authorities were able to converse with him in his native language. The record does not sustain defendant's charge that these interpreters violated or abused the functional purpose for which they were serving. Nor was the plea entered by the defendant at the preliminary hearing in violation of or contrary to any statutory requirement relating thereto.

From the record we find the defendant had a fair trial and that the conviction and sentence should be affirmed.

AFFIRMED.