STATE OF NEBRASKA, APPELLEE, V. ROBERT E. LONGMORE, APPELLANT.

134 N. W. 2d 66

Filed March 26, 1965. No. 35856.

E. J. McCarthy and Frank J. Kneifl, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is a criminal action in which Robert E. Longmore was charged with second degree murder and found guilty of manslaughter by verdict of the jury. Thereafter the district court entered an order which overruled the motion for a new trial and in the same order placed

Longmore on probation for 2 years under conditions. Appeal was promptly taken.

The State filed a motion to dismiss the appeal upon the ground that no final order of judgment has been entered, there being no sentence; and that Longmore had accepted the terms and conditions of his probation and, therefore, had waived his right of appeal.

The issues raised in the motion to dismiss have not been passed upon before by this court and necessitate a decision upon the motion before considering the case on the merits.

Article I, section 23, of the Nebraska Constitution, provides in part that: "The writ of error shall be a writ of right in all cases of felony; * * *." In 1961, the Legislature, in effect, abolished the writ of error, and provided that appeals under the criminal code be the same as in civil cases. § 25-1912, R. S. Supp., 1963.

The development of the law on the issues involved here can be seen from a thorough examination of the cases; but differences in statutes, constitutions, and factual situations have led to many different results. The authorities reflect the divergent attitudes of the various courts which have passed upon the issues. See, 4 Am. Jur. 2d, Appeal and Error, §§ 161, 270, 274, pp. 674, 764, 767, and supplements; 24 C. J. S., Criminal Law, §§ 1649, 1668, pp. 1004, 1047, and supplements; Annotations, 126 A. L. R. 1210, 117 A. L. R. 929.

The State points out that we have held many times that a judgment or final order must include a sentence. None of the cases cited involved a probation order. Apparently the last such pronouncement was in Kennedy v. State, 170 Neb. 193, 101 N. W. 2d 853, and it also held that error proceedings may be taken from the overruling of the motion for new trial, or the imposition of sentence, whichever is the later.

Historically the courts generally held that imposition of a sentence was required for finality; and that acceptance of probation waived the defendant's right to appeal.

The federal rule has developed from that point. See, Berman v. United States, 302 U. S. 211, 58 S. Ct. 164, 82 L. Ed. 204 (relied upon by the State here); Birnbaum v. United States, 107 F. 2d 885; Nix v. United States, 131 F. 2d 857. The present federal rule, however, has been in effect since 1943.

Korematsu v. United States, 319 U. S. 432, 63 S. Ct. 1124, 87 L. Ed. 1497, established this rule. In that case, the court said: "In the Berman case, supra, we held that the appeal was proper where the sentence was imposed and suspended, and the defendant was placed on probation. The probationary surveillance is the same whether or not sentence is imposed." The court further said: "* * * a probation order is 'an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline.' Cooper v. United States, 91 F. 2d 195, 199.

"The difference to the probationer between imposition of sentence followed by probation, as in the Berman case, and suspension of the imposition of sentence, as in the instant case, is one of trifling degree. Probation, like parole, 'is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency,' Zerbst v. Kidwell, 304 U. S. 359, 363, and this end is served in the same fashion whether or not probation is preceded by imposition of sentence. In either case, the liberty of an individual judicially determined to have committed an offense is abridged in the public interest. In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation * * * on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.' Berman v. United States, supra, 212, 213."

Many, if not most, of the cases on the issue of waiver of the right of appeal by acceptance of probation, involve cases where the defendant accepted probation, and later attempted to appeal when the probation was terminated

and sentence imposed. One of the leading cases on the issue for many years was the case of Brooks v. State, 51 Ariz. 544, 78 P. 2d 498, 117 A. L. R. 925. It has been cited as an authority for the historical rule on many occasions. The defendant there was given a suspended sentence and probation and almost 2 years later violated the conditions of his probation and sentence was thereupon entered. The court held that by accepting the benefits of the probation he had waived his right of appeal. In 1962 the Arizona court overruled the Brooks case in State v. Heron, 92 Ariz. 114, 374 P. 2d 871. The court stated: "The policy expressed by the cases holding the sentence is the judgment seems to be that the defendant should be grateful he is not behind bars. He cannot appeal from his conviction because he is better off than he might be. If he wants to test his conviction he must give up his freedom and appeal from his cell. * * *

"One who is placed on probation is subjected to an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. In either case the defendant is worse off than he would be had he not been convicted."

For cases related in result or reasoning, but on other grounds or issues, see, State v. Carroll (N. D.), 123 N. W. 2d 659; Rash v. State (Tex. Cr.), 323 S. W. 2d 53; State v. Miller, 225 N. C. 213, 34 S. E. 2d 143; State v. Carpenter, 67 Idaho 277, 176 P. 2d 919.

Our statutes make it mandatory that the district court "* * * ascertain, if practicable, through the agency of a probation officer or otherwise, the age of the accused, whether the offense of which he is found guilty by such verdict is his first offense, the extent of the moral turpitude involved in the act committed by the accused, and such other facts and circumstances relating to the accused as he may desire to know." § 29-2217, R. R. S. 1943. "In case such judge, considering the age of the accused, his former course of life, disposition, habits,

and inclinations, or any other obtainable information, should be of the opinion that the accused would refrain from engaging in or committing further criminal acts in the future, the court may, in its discretion, enter an order, without pronouncing sentence, suspending further proceedings and placing the accused on probation * * *." § 29-2218, R. R. S. 1943.

Our statutes on probation make no requirement or provision for either a request from, or an acceptance by, the accused. Historically, the attitude was that a defendant who asked for and accepted probation, had conceded his guilt and thrown himself on the mercy of the court. Under modern probation provisions and procedures, and our present judicial administration, it would be straining logic to the utmost to assume that where the accused asked for probation, he received it only because of the request. It is almost more difficult to contend that after probation is granted and the order entered, it was not really a judicial determination by the court, but was, instead, inspired by the defendant, and was made with an implied condition that he waives his right to appeal by accepting. Such an historical position ignores the realities of the situation. Neither reason nor justice authorize or require any such conclusion. We point out also that the defendant here filed his notice of appeal within the time limit and 11 days after he acknowledged receipt of the order of probation. It can scarcely be said that his attitude was inconsistent with an intention to take an appeal.

In view of our constitutional guaranty of the right of appeal and our statutes which combined civil and criminal appeal procedures in 1961, we hold that an order overruling a motion for a new trial and placing the defendant on probation is a final appealable order under section 25-1912, R. S. Supp., 1963. We hold also that neither a request for, nor an acceptance of, an order of probation is, in itself, a voluntary waiver of the right of appeal. The obvious corollary holding is that a de-

fendant must appeal from the order within the statutory time. He may not take the benefit of his probation and hold off on his appeal.

The motion to dismiss is overruled. We proceed now to a determination of the case on the merits.

The defendant, Robert E. Longmore, was 49 years old, had an eighth grade education, and had been employed by the railroad on the section for 12 to 15 years. He had been married for 29 years. He had lived in Plattsmouth, Nebraska, for approximately 25 years until 1960; and in Ashland, Nebraska, until September 1963, when he moved to Waterbury, Nebraska, where he resided on January 18, 1964. On that date, the defendant and his wife were at a cafe-filling station in Willis, Nebraska. The defendant's wife was employed at the cafe as a waitress. During the course of the evening, one Thomas Quinn, the deceased, had called the defendant's wife vile and filthy names. The defendant had remonstrated and the proprietor had evicted Quinn. At about 10 p.m., Quinn returned to the cafe and again commenced calling defendant's wife vile and filthy names. The defendant and the deceased scuffled in the presence of some 13 to 15 persons in the cafe. After the scuffle, the deceased had a wound on the left side of his neck which had severed the carotid artery and the jugular vein from which the deceased subsequently died. No one saw a knife or weapon. In the early morning of January 19, 1964, defendant was taken into custody by the Dakota County sheriff, questioned by the sheriff and the county attorney, and released at 3 a.m., January 19, 1964, into the custody of Florence and Vernon Chase of South Sioux City, Nebraska. The defendant was again taken into custody on January 19, 1964, at approximately 9:30 a.m., released later, and arrested again about 2:30 p.m., the same afternoon. The defendant was released January 20, 1964, at approximately 8:30 p.m., after a coroner's inquest was held. The defendant was represented at the coroner's inquest by the firm of McCarthy & Kneifl

of South Sioux City, Nebraska. The first part of the week preceding February 14, 1964, the county attorney of Dakota County hired a professional investigator and polygraph examiner from Chicago to investigate the matter. The defendant and his wife were summoned by the authorities to be present for further investigation and the defendant and his wife presented themselves on the morning of February 15, 1964, with their attorney. The defendant and his wife were interrogated by the authorities in the presence of their attorney at the city hall in South Sioux City, Nebraska, and released. During the interrogation, the defendant and his wife were given advice by their attorney concerning matters propounded to them. The authorities were informed that the defendant and his wife could be found at the home of Florence and Vernon Chase if needed further. Later that day, February 15, 1964, the defendant and his wife were charged with second degree murder and warrants were issued for their arrest. The sheriff received the warrants from the county attorney sometime between 8 and 10:30 p.m. on Saturday night, February 15, 1964. In the early morning of Sunday, February 16, between 1:30 and 2 a.m., the sheriff went to the Vernon Chase residence and arrested the defendant and his wife. During the time they were getting up and getting dressed, the sheriff permitted the defendant to call his attorney and advise him that he was being arrested. At the time of the arrest, the sheriff told the defendant's attorney that he was taking the defendant and his wife to jail. The defendant's attorney told the defendant to go along with the sheriff and that the attorney would be right there. The sheriff took the defendant and his wife directly from the Chase residence to Pender, Nebraska, a distance of approximately 40 miles into another county and put them in jail. Vernon Chase inquired where they were taking the defendant and his wife, but the sheriff did not answer. At approximately 2 a.m. on Sunday morning of February 16, the defendant's attorney,

looking for the defendant and his wife, asked the county attorney, in the presence of sergeant Wayne Rowe of the Nebraska Safety Patrol, the whereabouts of his clients. The county attorney refused to tell the defendant's counsel the whereabouts of the defendant and his wife, although the county attorney knew they were enroute to Pender, Nebraska, and he had, prior to that time, made arrangements with the sheriff of Thurston County, Nebraska, to bring the defendant and his wife to Pender. The county attorney and sergeant Wayne Rowe then picked up Leonard Harrelson, the professional investigator, and went directly to Pender, Nebraska, arriving between 3 and 4 a.m. The defendant's wife was interrogated extensively and thereafter at approximately 6:40 a.m., Leonard Harrelson, the professional investigator, took the defendant to an office on the second floor of the courthouse. The sheriff of Dakota County, the deputy sheriff of Dakota County, the sheriff of Thurston County, the county attorney of Dakota County, and sergeant Wayne Rowe of the Nebraska Safety Patrol were present when the defendant was taken to an upstairs room for questioning by Mr. Harrelson alone. The defendant at the very outset of the questioning by Mr. Harrelson stated that he did not want to answer any questions unless his attorney was present. Mr. Harrelson inquired if he knew where his attorney was and suggested to him that his attorney might not be representing him any longer since he was charged with second degree murder. This much was admitted by Leonard Harrelson. The defendant testified that Harrelson threatened him with first degree murder charges and threatened that his wife would also be charged with first degree murder if he did not confess. He said that he saw his wife crying, knew that she was in poor health, and knew that she had been interrogated also. The defendant also testified that Harrelson promised that if the defendant confessed, his wife would be set free the first thing in the morning. The defendant then

agreed to make a statement which he wrote out in his own handwriting in the presence of sergeant Rowe. A preliminary portion of the statement was dictated by Leonard Harrelson. Neither the defendant nor his wife were subjected to any physical threats or violence of any kind. The defendant was not at any time during the interrogation advised of any rights that he had, nor that he had an absolute right not to say anything. After the defendant had signed the statement or confession, which became exhibit 7, he was brought out into the presence of his wife. The defendant's wife was then released and taken home by the sheriff.

The principal issue in this case is whether exhibit 7, the defendant's confession, which was admitted in evidence, was obtained in violation of his rights under the Constitutions of this state and the United States.

"In a criminal trial a confession of guilt alleged to have been made by the defendant is not competent in evidence, unless first shown to have been voluntarily made." Parker v. State, 164 Neb. 614, 83 N. W. 2d 347, and cases there cited. The court must first determine on evidence taken out of the presence of the jury, if there is objection to taking it in the presence of the jury, whether or not it has been sufficiently shown that the confession was voluntarily made. The question to be determined by the court is that of whether or not the affirmative evidence shows that the confession was voluntarily made and that this evidence excludes any other hypothesis. It is sufficient to establish affirmatively all that occurred immediately prior to and at the time of making the confession, provided such affirmative proof shows it to have been freely and voluntarily made and excludes the hypothesis of improper inducements or threats. Holthus v. State, 138 Neb. 200, 292 N. W. 603; Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1, affirmed, 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86. Before the confession is received in evidence, the defendant may introduce evidence to show that the confession is involuntary and

for this purpose may show all of the circumstances under which the confession was made. Counsel for the defendant, before the confession is admitted, has a right to cross-examine the witnesses who propose to testify to it as to the circumstances surrounding the making of it, and may also call at the same time independent witnesses and examine them, going thoroughly into the whole matter as to how the confession came to be made, the parties present, and the physical condition and state of mind of the prisoner at the time it was made; and then the court, with all these facts before it, is to pass upon its admission. Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824; Tramp v. State, 104 Neb. 222, 176 N. W. 543.

Under Nebraska procedure, the admission of the confession in evidence constitutes the court's independent determination that the confession is voluntary. See Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908.

The interrogation of the defendant's wife was clearly a part of the circumstances surrounding the making of the defendant's confession and should have been admitted. The extent to which defendant's right to consult counsel, during the period prior to and during the interrogation, was delayed or denied is clearly proper to be shown. Stagemeyer v. State, *supra*.

The question of whether or not in the first instance the State has laid proper and sufficient foundation for the admission of a confession is one of law for the court. If the court determines as a matter of law that no sufficient foundation has been laid, then the confession should be rejected, but where the confession is received in evidence, its voluntary character is still a question of fact for the jury. Parker v. State, *supra*.

The use of any confession obtained in violation of the due process clause requires reversal of the conviction even though unchallenged evidence adequate to convict remains. Gallegos v. State, *supra*. It became settled in the case of Spano v. New York, 360 U. S. 315,

79 S. Ct. 1202, 3 L. Ed. 2d 1265, that at least as to one formally indicted and charged with a homicide, he is entitled to counsel at every step of the proceedings. As stated by Mr. Justice Douglas in a concurring opinion in that case: "The question is whether after the indictment and before the trial the Government can interrogate the accused *in secret* when he asked for his lawyer and when his request was denied. * * * Depriving a person, formally charged with a crime, of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself * * *. This is a case of an accused, who is scheduled to be tried by a judge and jury, being tried in a preliminary way by the police. This is a kangaroo court procedure whereby the police produce the vital evidence in the form of a confession which is useful or necessary to obtain a conviction. They in effect deny him effective representation by counsel." Mr. Justice Stewart's concurring opinion held: "Indeed the right to the assistance of counsel whom the accused has himself retained is absolute, whatever the offense for which he is on trial."

In the case of Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A. L. R. 2d 733, which has already become a classic landmark, Mr. Justice Black stated: "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."

In the case of Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246, Mr. Justice Stewart's language in the Spano case was paraphrased as follows: "It was said that a Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less, it was said, might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'" The court in the Massiah case also stated: "Ever since this

Court's decision in the Spano case, the New York courts have unequivocally followed this constitutional rule. 'Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.' "

In the case at bar, the evidence clearly establishes a violation of the defendant's constitutional rights. The defendant had previously been interrogated on several occasions; and the authorities knew that he was represented by specific counsel retained by him and knew that his counsel was trying to find him. He and his wife were arrested in the middle of the night and taken to a jail 40 miles away in another county. The county attorney, the sheriff and deputy sheriff of one county, the sheriff of another county, a sergeant of the Nebraska Safety Patrol, and the professional private investigator employed by the county attorney all arrived there at approximately 3 a.m. on a Sunday morning and proceeded to interrogate the defendant and his wife. The officials refused to tell the attorney retained by the defendant where the defendant and his wife were; the defendant refused to answer any questions unless his attorney was present; and the professional investigator cleverly misled him into believing that his attorney no longer represented him. No one advised him that he had an absolute right to remain silent. While the professional investigator denies that any promises were made to release his wife if he confessed, the fact remains that immediately after the defendant signed the confession, his wife was released and taken home, although the warrant against her for second degree murder was still outstanding. All of the facts together indicate without any question that this was a secret interrogation, planned and prepared in advance, and deliberately excluding defendant's known counsel. All of the facts

and circumstances establish the fact that the confession was involuntarily made in violation of the due process clause of the Constitutions of the State of Nebraska and of the United States.

A defendant formally indicted and charged with a homicide is entitled to the right of effective counsel at every step of the proceeding. While it is important that persons who have committed crimes be convicted, there are considerations which transcend the question of guilt or innocence.

A secret interrogation of a defendant charged with a felony, when the accused has asked for and been denied the presence of his counsel, is a violation of his constitutional rights. A confession obtained in violation of the defendant's constitutional rights is involuntary and inadmissible in evidence.

Robert E. Longmore was effectively denied the right of counsel and his constitutional rights were violated. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

CARTER, J., dissenting.

I dissent from the opinion of the court in this case on two basic grounds: First, that there is no appealable order and, second, that any right of appeal possessed by the defendant was waived.

As to the first point, it has always been the law of this state that a sentence is necessary to the right of appeal in a criminal case. Farrington v. State, 116 Neb. 712, 218 N. W. 590; Gartner v. State, 36 Neb. 280, 54 N. W. 516. In the instant case the jury returned a verdict of guilty, a motion for a new trial was filed and overruled, and sentence was suspended as provided by section 29-2218, R. R. S. 1943. In Kennedy v. State, 170 Neb. 193, 101 N. W. 2d 853, we made it clear that a motion for a new trial that is overruled before sentence is imposed in a criminal case is an interlocutory as distinguished from a final appealable order. The majority opinion

holds that the overruling of a motion for a new trial before sentence and placing a defendant on probation is a final order under section 25-1912, R. S. Supp., 1963. I submit that this creates an exception to our long-established rule and that no logical basis exists for promulgating such exception.

As to the second point, the majority rule is: "As a general rule, the voluntary acceptance of a suspended sentence, probation, or parole waives the defendant's right to appeal." Annotation, 117 A. L. R. 929. In the instant case defendant's counsel pleaded ardently for a suspended sentence and probation. The court granted a suspended sentence and fixed the terms of the probation. A copy of the probation order was given to the defendant, who signed a statement appended thereto in which he acknowledged that he knew its provisions and that he knew he was subject to sentence on the verdict of guilty if he violated its terms. He further accepted probation by accepting release from custody in accordance with its provisions.

The request and grant of a suspension of sentence has the effect of suspending all further proceedings in the case. This is effective not only upon the State but upon the defendant as well. The suspension of all proceedings at the request of the defendant implies an admission of the doing of some legal wrong and his probation for rehabilitation purposes, and not punishment. The terms of the probation require that he conduct himself for a limited period of time as all law-abiding and responsible citizens do. The fact that he is subjected to surveillance by a probation officer to see that he complies does not have the effect of changing probation to punishment. I submit that the statement in Brooks v. State, 51 Ariz. 544, 78 P. 2d 498, 117 A. L. R. 925, that, in accepting a choice between the benefits of suspension and contesting the case by appeal, the defendant should not be permitted to change his position and take the benefit of both and, as that court said: "He cannot eat his

cake and have it too." Many, many cases support this position which I shall not take the space to cite.

A contrary rule has developed in some state jurisdictions since the case of Korematsu v. United States, 319 U. S. 432, 63 S. Ct. 1124, 87 L. Ed. 1497. The basis of that decision is the statement from that opinion to the effect that an appeal can be taken notwithstanding probation on the theory that probation is an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. If this be true, every juvenile delinquent who is placed on probation has received a criminal sentence, a situation which both the courts and Legislature of this state have sought to avoid. The rule adopted by the majority from the Korematsu case is but another instance of coddling of criminals and persons charged with crime by that court which has become so prevalent in recent years.

No basis exists for making an exception to our established rule requiring a final order which includes a sentence before an appeal can be taken to this court in criminal cases. An appeal from a suspended proceeding is an inconsistency of terms. In any event, the request, grant, and acceptance of a suspension of the proceedings by a defendant in accordance with the statute means what the statute says and amounts to a waiver of any further proceedings, including an appeal.