STATE OF NEBRASKA, APPELLEE, v. DONALD BREAKER, APPELLANT.

APPELLANT.

136 N. W. 2d 161

Filed July 2, 1965. No. 35967.

George D. McArthur, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and WESTERMARK, District Judge.

WHITE, C. J.

One James Kubicka burglarized his brother's house at 610 North Lexington Street, Hastings, Nebraska, about 6 p.m., July 4, 1964. Defendant Donald Breaker was prosecuted in this action for the crime as an aider, abettor, or procurer under the terms of section 28-201, R. R. S. 1943, which provides that such aider or abettor shall be guilty as a principal. The defendant was found guilty by a jury and appeals from the conviction and sentence, asserting the insufficiency of the evidence and error by the trial court in not instructing on its own motion as to the issue of voluntariness of an oral confession received in evidence over objection. We reverse the judgment and remand the cause for a new trial.

The state's evidence supporting the conviction rests on the testimony of one James Kubicka, who alone broke into the house and took two wrist watches, an electric razor, thirty silver dollars, and two two-dollar bills, and on the oral confession of the defendant to one Bobby Henry, a deputy sheriff. The evidence shows that the defendant, his wife, and James Kubicka were together on the afternoon of July 4, 1964, at Ingleside Hospital at Hastings, Nebraska. Kubicka testified that he had a conversation with the defendant about 5 p.m. that afternoon; that they were both low on money; and that they talked the "break-in" over together. This conversation and the related events in the execution of the plans were testified to by Kubicka as follows: "Q Jim, tell the Court what was said at that conversation, would you? A Well, I told him I was running kind'a low on money, and he asked me if I knew where I could get any; and I said, 'well, my brother has a silver dollar collection,' so we decided that we'd go into my brother's house; so he took me up to my folk's house,

I went in, changed clothes, got something to eat, and then I went over to my brother's house, picked the lock on the back door; I went in; I picked up the silver dollars, two two-dollar bills, electric razor, and one man's wrist watch, and a lady's wrist watch; he was supposed to pick me up at seven o'clock, down in front of the Silver Grill; I left my brother's house, and I went over on Burlington, as — and I seen him turn north going on Seventh, and I hollered at him, and he turned around and came back; then I got in the car, and he asked me how much I got, and I told him I didn't know that I would count it; then I gave him two dollars to get some gas, and we went and got two dollars worth of gas; * * * Q Jim, calling your attention to the time that you had this conversation out at Ingleside, did the defendant state that he would pick you up at the Silver Grill? A Yes, he did. Q After you had taken the articles? A Yes sir, he did. * * * Q What was your purpose of going down there? A Well, I told Don to see if he could sell that silver dollar; and I gave it to him, and he sold it. * * * Q Did he attempt to get them sold at a pawn shop? A Yes sir. Q Did he name the pawn shop? A No sir. Q Did he state why he couldn't get rid of them? A He told me that they wouldn't give him enough money. Q And all the time he knew that these were the articles that you had taken from your brother's house? A Yes sir. * * * Q What was the conversation then? A About this break-in at my brother's house. Q Did you admit it at that time? A Yes sir, I did. Q And at that time didn't you say that Mr. Breaker helped plan it? Did you state, Jim, that the defendant Breaker helped plan it at that time? A Yes sir, I did."

The testimony is undisputed that defendant was not present at the scene of the crime. Kubicka burglarized the house sometime between 6 p.m. and 7 p.m. Defendant went to the Silver Grill about 7 p.m., and, not finding Kubicka, drove down the street and picked him up

at about Seventh and Burlington. This is what the defendant was to do in the plan testified to by Kubicka. The evidence shows that the defendant sold an 1897s silver dollar and tried to dispose of other articles at a pawn shop in Grand Island but was unable to do so because he could not get the right price for them.

The evidence shows that Kubicka and Breaker started to spend and dispose of the proceeds immediately after they met. Kubicka bought the defendant some gas, they bought liquor two different times which they consumed during the evening of July 4, 1964, and they were together and the defendant furnished the transportation both before and after the commission of the burglary. Some of the stolen articles were kept in the defendant's car.

The deputy sheriff, Bobby Henry, testified that the defendant, in a conversation at the county courthouse on the evening of July 10, 1964, in the presence of James Kubicka and sheriff Anderson, admitted that the burglary was planned at Ingleside and that he was to pick up Kubicka at 7 p.m. at the Silver Grill in order to establish an alibi for Kubicka.

We think the evidence was sufficient for the jury to infer that the defendant aided and abetted the commission of the crime and therefore was guilty as a principal under the terms of section 28-201, R. R. S. 1943, which abolished the common law distinction between accessories before the fact and principals and made all guilty as principals.

It is not necessary for defendant to be present at the scene of the crime, either actually or constructively. Neal v. State, 104 Neb. 56, 175 N. W. 699; Lamb v. State, 69 Neb. 212, 95 N. W. 1050. See, also, Skidmore v. State, 80 Neb. 698, 115 N. W. 288. On the other hand, it may be conceded that mere presence or knowledge alone is not sufficient to warrant a conviction as an aider and abettor. Quoting with approval, 14 Am. Jur., Criminal Law, § 110, p. 841, we recently said in Wilson v. State,

170 Neb. 494, 103 N. W. 2d 258, as follows: " 'To constitute one an accomplice he must take part in the crime, perform some act, or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, however reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice * * *.' "

In 22 C. J. S., Criminal Law, § 88 (2), p. 261, it is stated: "As used in the criminal law, aiding and abetting means to assist the perpetrator of a crime and comprehends all assistance rendered by acts or words of encouragement, incitement, or support, or presence actual or constructive with preconcert with the intention of rendering assistance, if necessary." And, later in the same section quoted from above, pp. 262, 263, it is stated: "Aiding and abetting involves some participation in the criminal act or involves some conscious sharing in the criminal act, as in something that accused wishes to bring about, in furtherance of the common design, either before or at the time that the criminal act is committed, and it is necessary that he seeks by his action to make it succeed." And, in 14 Am. Jur., Criminal Law, § 101, p. 836, it is said: "The advice or encouragement which will render one an accessory before the fact may be by acts or words, but it must, to create guilt, be used with the intent to encourage and abet the crime. The amount of advice or encouragement rendered is not material if it has effect in inducing the commission of the crime. Nor is the time of rendering the advice, aid, or encouragement an important element."

There is testimony that both Kubicka and the defendant needed money; that the crime was planned to solve their mutual need; and that their planning resulted in an agreement to meet afterwards at the Silver Grill to help establish an alibi. The jury was entitled to con-

sider all inferences to be drawn from the defendant's active and immediate participation in the spending, using, and the selling of some of the proceeds of the crime. There was evidence that this was not a case of mere knowledge and acquiescence. The jury could reasonably infer that the defendant rendered, by both words and acts, encouragement and assistance in the overall plan for the commission of the burglary. There is testimony that as soon as the defendant met Kubicka after the burglary that he inquired as to how much Kubicka got, and then, as mentioned, the defendant immediately proceeded to jointly participate in the proceeds and tried to sell and dispose of some of the articles. The evidence is that Kubicka stayed in the defendant's house until the Monday morning after the crime was committed. We think there was sufficient evidence for the jury to find beyond a reasonable doubt, under the applicable rules, that he aided and abetted the burglary committed by Kubicka and was therefore guilty as a principal.

The defendant asserts error in the failure of the court to instruct on and submit to the jury the issue of the voluntariness of the oral confession or admission of the defendant to the deputy sheriff Bobby Henry. Henry had taken the defendant to the courthouse for interrogation on the evening of July 10, 1964. It appears that sheriff Anderson and Kubicka were also present. Over objection Henry testified that defendant said they planned the burglary and that defendant would pick Kubicka up at the Silver Grill at 7 p.m. and establish an alibi for Kubicka. The record shows that defendant's counsel cross-examined as to foundation for this testimony, and after doing so, repeatedly objected on several grounds, including the general one that the testimony sought to be elicited was in violation of the defendant's constitutional rights.· The following colloquy took place: "MR. MCARTHUR: Your Honor, we object to any of the proposed testimony this witness would give as to what the defendant said as having been given

at a time when he had no counsel, and was not apprised of his constitutional rights not to testify against himself; it being our point that this witness giving that testimony would defeat the amendment of the United States Constitution by the giving of testimony indirectly. MR. CONNOLLY: Your Honor, if the Court please, it will be shown that Mr. Breaker went voluntarily, and volunteered this information."

Objection was made for the same reason to the specific questions of the county attorney of this witness that produced the oral confession or admission referred to. The court overruled all objections and admitted the testimony referred to. The defendant testified in substance that upon being taken to the courthouse by Henry, he was questioned and was addressed by sheriff Anderson as follows: " "* * * let's play "truth or consequences"; you tell me the truth, or you get the consequences.' " He further testified that the remark was made as the sheriff was taking off his jacket and laying it in his car; that he was frightened by this act; and that he believed he was going to be shoved around. Sheriff Anderson was not called by the State as a witness. The record does not reveal interrogation affirmatively establishing that the confession was voluntarily made and excluding the hypothesis of improper inducements or threats. This was necessary. State v. Longmore, *ante* p. 509, at p. 518, 134 N. W. 2d 66; Holthus v. State, 138 Neb. 200, 292 N. W. 603; Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1, affirmed, 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86. And, in a criminal trial, a confession of guilt alleged to have been made by the defendant is not competent evidence unless first shown to have been voluntarily made. State v. Longmore, *supra;* Parker v. State, 164 Neb. 614, 83 N. W. 2d 347.

We point out that the repeated objections made to this evidence were broad enough to call the attention of the trial judge to the issue of voluntariness of the oral admission. This is especially true in light of the

construction put on the objections by the county attorney in promising to supply the missing foundation by showing the statement to be voluntary. We further point out that even if the trial judge properly admitted the testimony of Henry at this time, the defendant's own evidence as to the threat by Anderson was adequate to challenge the voluntariness of the confession. It could not be denied that this oral confession was vital and an essential part of the State's evidence. And, as we have said, it may not be used unless it is first shown to be voluntary. We recently held in State v. Longmore, *supra*, as follows: "The question of whether or not in the first instance the State has laid proper and sufficient foundation for the admission of a confession is one of law for the court. If the court determines as a matter of law that no sufficient foundation has been laid, then the confession should be rejected, but where the confession is received in evidence, its voluntary character is still a question of fact for the jury." See, also, Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323; Kitts v. State, 151 Neb. 679, 39 N. W. 2d 283.

We have also held that where the trial court admits a confession challenged as involuntary by defendant's evidence, it is prejudicial error to refuse to submit to the jury for its determination under appropriate instructions the question of whether defendant's alleged confession was voluntary. Kitts v. State, *supra*. And, the rule is well established that it is the duty of the trial court to instruct the jury on the law of the case, whether requested to do so or not, and an instruction or instructions, which, by the omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case, is prejudicially erroneous. Jones v. State, 147 Neb. 219, 22 N. W. 2d 710; Young v. State, 74 Neb. 346, 104 N. W. 867, 2 L. R. A. N. S. 66; Dolan v. State, 44 Neb. 643, 62 N. W. 1090.

While our previous cases, such as Kitts v. State, *supra*, deal with this question when there has been a request

for an instruction by the defendant, it is claimed that the absence of such a request in this case relieves the trial court of the responsibility. As we have seen, the question of the voluntariness of an oral or written confession is an essential fact issue. Our law requires its ultimate resolution by the jury. We feel that the failure of the court to instruct on this material issue, when the defendant's evidence raised the question, amounted to a withdrawal by the trial court of this vital issue from the consideration of the jury. The issue of whether the admission or confession was coerced is vital to the preservation of the defendant's constitutional rights. The use of a coerced confession obtained in violation of the due process clause requires reversal of the conviction even though unchallenged evidence adequate to convict remains. State v. Longmore, *supra*. The general rule is that when the issue of voluntariness of an admission or confession is raised, the court should give appropriate instructions on the issue. See 23A C. J. S., Criminal Law, § 1232, p. 586. And, when the issue is raised the court should properly instruct as to what constitutes a voluntary confession. See 23A C. J. S., Criminal Law, § 1232, p. 589, note 45. A case quite similar is People v. Bevins, 54 Cal. 2d 71, 351 P. 2d 776. In that case the defendant testified with regard to her confession that she made it as a result of long questioning by the officers; that she did it "in order to be left alone"; and that she did it to absolve several friends and relatives who were with her at the time of her arrest and whom she feared were being detained. On the other hand, there was testimony on the part of the state as to the voluntary character of the confession. The court, after stating the applicable rule as to the duty of the court to instruct as to the law on its own motion, the same rule that we have in this jurisdiction, held that it was the duty of the court to instruct on the issue of voluntariness on its own motion. The court said: "In the case at bar the testimony as to the circumstances surrounding the manner

in which defendant's confession was obtained was in direct conflict, thus directing to the attention of the trial judge that, under familiar rules, while it was within his discretion to permit the confession to be read to the jury, *he was also required to submit to the jury for its determination under proper instructions the question whether under all the circumstances the confession was made freely and voluntarily.* (People v. Gonzales, supra, 24 Cal. 2d 870, 876.)" (Emphasis supplied.)

We will not belabor the authorities further. An oral admission or confession of the defendant was not competent evidence unless the jury first found factually that it was voluntary. It was the duty of the court to instruct as to what constituted a voluntary confession and also to instruct the jury to disregard the alleged confession if found to be involuntary. See Heddendorf v. State, 85 Neb. 747, 124 N. W. 150. This is not a case of a confession being received wholly without objection or one where the defendant, by his own testimony, raises no issue of voluntariness. The objections raised the issue of whether its reception violated the defendant's constitutional rights. The objections were construed by the State's counsel as relating to the voluntariness of the giving of the confession. The defendant's affirmative evidence raised the issue of whether the confession or admission was received as the result of threats and fear generated by the acts and conduct of the officer. A vital fact issue as to the voluntariness of the oral admission or confession of the defendant was clearly raised in the record of this case. The failure of the trial court to instruct thereon amounted to a withdrawal of this issue from the jury's consideration. We hold that under these circumstances it is unnecessary that a defendant request an instruction upon the issue. The fundamental fact issue was presented and it was necessary for the court to instruct on this issue to protect the defendant's basic constitutional rights not to have the alleged admission or confession considered unless the jury first found said confession

or admission to be voluntary under the applicable principles of law.

There is another reason that further leads us to the conclusion we come to in this case. The testimony in this case is undisputed that the defendant was mentally defective and easily influenced by other people. In Shellenberger v. State, 97 Neb. 498, 150 N. W. 643, L. R. A. 1915C 1163, in speaking of an alleged confession of a defendant charged with murder, the court said as follows: "If he is a degenerate or defective, there is the more reason for care and caution that every provision which the law offers for the protection of those accused of a crime should be allowed. * * * It is true the confession *may* be competent evidence, but this can only be so if the jury are satisfied that the defendant made it voluntarily and understandingly, and not by reason of mental weakness or obliquity."

In light of our holding herein, it becomes unnecessary to discuss the other assignments of error. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.